■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KENNETH LUMPKIN, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Friedmann, J.), rendered January 13, 1989, convicting him of robbery in the third degree, grand larceny in the third degree, grand larceny in the fourth degree, criminal possession of stolen property in the third degree, unauthorized use of a vehicle in the third degree, and criminal mischief in the fourth degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and as a matter of discretion in the interest of justice, the first and sixth counts of the indictment charging the defendant with robbery in the third degree and criminal mischief in the fourth degree, respectively, are dismissed, and a new trial is ordered on the remaining counts.

On February 23, 1988, at approximately 2:30 A.M., the complainant was driving a taxicab when it was sideswiped by another taxicab being driven by the defendant. The complain-

ant testified that he entered the defendant's taxicab to obtain identification from the defendant, whereupon the defendant snatched the keys that the complainant had been holding in his open palm, and drove off in the complainant's taxicab.

We find that the evidence was insufficient to establish that the defendant employed the requisite amount of force necessary to establish robbery in the third degree (see, Penal Law §§ 160.00, 160.05; *People v Davis*, 71 AD2d 607). The count of the indictment charging the defendant with criminal mischief in the fourth degree must also be reversed, as the evidence was insufficient to establish that the defendant acted in a reckless fashion when he collided with the complainant's taxicab (see, Penal Law § 145.00 [3]).

The defendant raises instances of trial error which warrant a new trial on the remaining counts. During the trial, and before the complainant's testimony, the prosecution furnished the defense with a typed version of a police complaint report. When the defense asked about the existence and availability of the original handwritten notes from which the police officer prepared the report, the police officer stated that the report was based on a "scratch copy of the same thing". The court did not compel the production of the handwritten notes, even though, according to the testimony, there was no indication that they were destroyed, and they might well have been in existence. Nor did it conduct an examination to determine if the notes constituted *Rosario* material (see, *People v Adger*, 75 NY2d 723; see also, *People v Gallardo*, 173 AD2d 636).

The People, citing *People v Consolazio* (40 NY2d 446, 454, cert denied 433 US 914) and *People v Payne* (52 NY2d 743, 745), correctly point out that they are not required to turn over "duplicate equivalents" *(People v Consolazio, supra*, at 454) of statements previously turned over to the defense. The defense contends that on this record the trial court could have and should have directed the prosecution to produce and turn over the handwritten notes.

In *People v Wallace* (76 NY2d 953), a case in which identification was in issue, the Court of Appeals found "prejudice" in the People's failure to exercise due care to preserve the police officer's handwritten notes dealing with identification. Although the case before us is distinguishable from *Wallace*, in that the information embodied in the subject police report was perfunctory and did not approach the level of importance or relevance of the notes and report in *Wallace*, the court should

have compelled the production and turnover of any available, existing notes.

The defendant further contends that the Trial Judge improperly absented himself during a reading back of testimony to the jury. During its deliberations, the jury asked that the testimony of the complainant be read back. The Judge granted the request, but stated that he would not be present in the court room while the court reporter was reading back the testimony, but that he would be at his desk, so if "a problem" arose, the proceedings should be stopped and he should be notified immediately. In the presence of the defendant, counsel for both sides expressed their consent to this procedure. On appeal, however, the defendant, citing *People v Ahmed* (66 NY2d 307), characterizes it as an impermissible delegation of judicial authority that reaches to the level of per se reversible error, notwithstanding the expressed consent of the parties.

In *Ahmed,* the Trial Judge had taken ill and, upon the expressed consent of counsel for both sides, authorized his law secretary to assume judicial duties by allowing the law secretary to answer jurors' questions. This was held to be an improper delegation of a judicial function, incurable by the consent of the parties. Although a reading back of testimony has been held to be a critical stage of the proceedings *(see, People v Pizzali,* 159 AD2d 652), the People argue that the Judge's delegation of authority in *Ahmed* goes far beyond the temporary absence of the Judge in the case before us, and that the Judge pointedly contemplated, and stated, that nothing was to happen without him, should a problem arise. We also note that, in California, a Judge in a criminal case may, as a matter of discretion and in the absence of good cause shown, depart from the court room while testimony is read back to the jury during deliberations *(see,* Cal Penal Code § 1138.5). We have no similar statute in New York. We need not now decide whether under constitutional or statutory law *Ahmed* should be extended so as to declare that a Judge's absence from the court room during the reading back of testimony is reversible error per se *(see generally,* Annotation, *Criminal Trial—Absence of Judge,* 34 ALR2d 683). Although we agree with the People that the Judge's action here related to a matter far more ministerial than the extreme, substantive delegation in *Ahmed,* a Judge's absence from the court room during the reading back of testimony, with or without consent, is improper, and we strongly disapprove of it. It does not comport with the Judge's supervisory role *(see, People v*

*Silver,* 240 App Div 259), or with the established expectations and conventions that underlie the judicial function.

We also note that the court also erred in discharging a sworn juror on the last day of trial testimony, and replacing her with an alternate juror. The Trial Judge noted that he received word from his secretary that a sick juror "can't be in today." He then, without hesitation, declared that "the first alternate will fill her spot". We agree with the defendant that this was improper, because the court made no personal inquiry, learned of no details, did not establish the length or nature of the purported illness, and replaced the juror summarily without discussion or debate *(see, People v Page,* 72 NY2d 69). The defendant, however, voiced no objection at the time. Under other circumstances, this claim is unpreserved for appellate review, and, standing alone, would not have warranted reversal. However, the totality of the errors in this case mandates a new trial in the interest of justice. Harwood, Balletta and Rosenblatt, JJ., concur.

Lawrence, J. P., concurs in the result, with the following memorandum: I concur with my colleagues that a new trial is warranted because I am of the view that the Trial Justice improperly left the court room during the reading back of the complainant's testimony to the jury *(see, People v Ahmed,* 66 NY2d 307; *People v Patterson,* 39 NY2d 288, *affd* 432 US 197).

Further, since the matter is being remitted for a new trial, the discussion of the issue of the alleged *Rosario* violation *(see, People v Rosario,* 9 NY2d 286, 289, *cert denied* 368 US 866), should be clarified. The record discloses that there is no merit to the defendant's contention, raised for the first time on appeal, that he was entitled to the production of certain handwritten notes made by an investigating police officer since such notes did not constitute *Rosario* material. The testimony of that police officer indicated that he had made a handwritten "scratch copy" on a police complaint report form, which information was then typed onto another police complaint report form, and the "scratch copy" was returned to the precinct. The record does not disclose whether the "scratch copy" is still available. At the trial, the typed version was turned over to the defendant. Unlike the handwritten "notes" at issue in *People v Wallace* (76 NY2d 953, 954-955), in this case the "scratch copy" was clearly made to facilitate preparation of the typed complaint report form. Under similar circumstances, this court has held that such a typed version is a "duplicative equivalent" *(People v Consolazio,* 40 NY2d 446, 454, *cert denied* 433 US 914) of the handwritten copy *(see,*

*People v Winthrop,* 171 AD2d 829). Accordingly, in my view, the "scratch copy" of the police complaint report form need not be produced at a new trial, and any further inquiry at the retrial is unwarranted.