THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
ANTHONY GASKINS, Appellant.

Second Department, October 28, 1991

**APPEARANCES OF COUNSEL**

*Kevin Costello* for appellant.

*Richard A. Brown, District Attorney (Seymour Roth* of counsel), for respondent.

**OPINION OF THE COURT**

EIBER, J.

In an effort to reduce the trauma suffered by young

victims of sexual abuse, in 1984 the Legislature enacted CPL 190.32, which permits the prosecutor to present to the Grand Jury a child victim's videotaped testimony in lieu of his or her live testimony. At the same time, CPL 240.45, which codifies the *Rosario* rule *(see, People v Rosario,* 9 NY2d 286), was amended to expressly require the prosecutor to make available to a defendant "an examination videotaped" pursuant to CPL 190.32. The issue on this appeal is whether, in cases such as this where a videotaped examination of a child is presented to the Grand Jury in accordance with the procedures outlined in CPL 190.32, the transcribed minutes of that examination can be deemed the duplicative equivalent of the videotaped examination, thus relieving the prosecutor of the obligation to make the videotape available to the defendant. For the reasons which follow, we conclude that the transcribed minutes of the child witness's examination cannot be deemed the duplicative equivalent of the videotaped examination. Since the prosecutor in this case failed to turn over the videotaped examination of the child victim in violation of the recent statutory amendment to the *Rosario* rule, the defendant's conviction must be reversed and a new trial ordered.

## I

In January 1987 the six-year-old victim was taken to the hospital by her mother for treatment of a vaginal discharge. At the hospital, the child was diagnosed as suffering from gonorrhea. She subsequently revealed that her mother's boyfriend, the defendant, had sodomized her on several occasions. The mother filed a criminal complaint against the defendant, and he was arrested on February 4, 1987. Two months later, in accordance with CPL 190.32, an Assistant District Attorney videotaped the child's testimony for presentation before the Grand Jury.

During the videotaped examination, the child testified that the defendant had fondled and sodomized her three times during the later part of 1986. Throughout the examination, the six-year-old victim was often unable to verbally describe what had happened to her, and thus demonstrated the defendant's actions through the use of anatomically correct dolls. The child's age and limited vocabulary required the Assistant District Attorney conducting the examination to ask leading questions, and to describe the child's responses. For example, the child testified to the first incident of sexual abuse and sodomy as follows:

"Q. What did [the defendant] do to you?

"A. Put a finger on my thing.

"Q. Okay. On your thing. Could you show me with the dolls? Let's say this is the girl doll and this is the boy doll. Could you show me what [the defendant] did * * *

"A. Put finger on my thing.

"Q. On your thing? What do you call the thing that he put his finger on?

"A. My poo poo (ph).

"Q. Would that be your vagina down here, your vagina?

"A. (NODDING).

"Q. Okay. Did [the defendant] do anything else to you?

"A. (NODDING).

"Q. Show me what [the defendant] did to you.

"A. He put his thing on my back.

"Q. Okay. Could you show the camera what you're talking about, what [the defendant] did?

"A. Put his thing on my back.

"Q. When you say thing are you talking about this, his penis?

"A. Yeah.

"Q. Where did he put his thing in, right there?

"A. Yeah.

"Q. Okay. Inside the hole that's back there?

"A. Yeah".

Following presentation of the case to the Grand Jury, the defendant was charged in indictment number 2524/87 with sodomy in the first degree (four counts), sexual abuse in the first degree (four counts), and endangering the welfare of a child (five counts).*

At some point prior to the commencement of the jury trial in this action on January 14, 1988, the defendant's attorney was provided with a copy of the transcribed minutes of the child's Grand Jury testimony, but not with a copy of the videotaped examination. The People's failure to turn over a copy of the videotape came to the trial court's attention during cross examination of the child, who was the first

---

* At the outset of the trial, the trial court dismissed one count of sodomy in the first degree, one count of sexual abuse in the first degree, and four counts of endangering the welfare of a child, on consent of the prosecution.

witness to testify. At this stage of the trial, in response to questioning by the defendant's attorney, the child stated that she had previously testified before the Grand Jury, and that a videotape of her testimony had been made. Following this testimony, the defendant's attorney requested a side bar conference, and asked that he be provided with a copy of the videotape. The prosecutor objected to the defense counsel's request, stating that "[t]hey don't have a right to view the video. He has a transcript of the grand jury minutes". The court denied the defense counsel's application, reasoning that the defendant would be entitled to view the videotape only if the prosecution intended to offer it into evidence. The defense counsel took an exception to the ruling. At the conclusion of the trial, the defendant was convicted of two counts of sodomy in the first degree, three counts of sexual abuse in the first degree, and one count of endangering the welfare of a child.

## II

On appeal, the defendant contends that the prosecutor's failure to make available the videotape of the child's Grand Jury testimony violated the *Rosario* rule and deprived him of a fair trial. Analysis of the defendant's claim must begin by examining the statutory scheme which authorizes the video-taped examination procedure. As noted previously, in November 1984, the Legislature amended the CPL to create new section 190.32. The statute provides, in pertinent part, that "[i]n lieu of requiring a witness who is a child witness to appear in person and give evidence in a grand jury proceeding, the district attorney may cause the examination of such witness to be videotaped" (CPL 190.32 [2]). CPL 190.32 thus exempts child victims of sex offenses from the absolute requirement of personally appearing before the Grand Jury to testify about the crime *(see,* mem of Kings County District Attorney, 1984 NY Legis Ann, at 267). In a memorandum in support of the amendment, the Kings County District Attorney noted that "[t]he purpose of this bill is to lessen the traumatic impact upon young victims of sex offenses of testifying before a grand jury", and explained that: "This bill attempts to minimize the fear and embarrassment suffered by the child during his or her testimony by permitting the introduction of the child's videotaped testimony in the grand jury in lieu of his or her live testimony. Videotaping the child's testimony serves two purposes. It enables the child to testify in a more familiar and less-threatening setting than a

grand jury room. It also enables the child to testify without the intimidating presence of a substantial audience. Thus, essential testimony can be obtained without further endangering the psychological well-being of the child victim" (mem of Kings County District Attorney, 1984 NY Legis Ann, at 268).

In furtherance of the legislative intent to facilitate videotaped examination of child witnesses, CPL 190.30 was simultaneously amended to add a new subdivision (4), which permits a videotaped examination of a child witness to be received in evidence in a Grand Jury proceeding "as the testimony of such witness". When such a videotaped examination is introduced into evidence and played before the Grand Jury, the CPL further requires the Grand Jury stenographer to "record the examination in the same manner as if the witness had testified in person" *(see,* CPL 190.32 [6]).

As part of the same legislation which amended CPL 190.30 and added 190.32, the *Rosario* statute was amended "[t]o reflect the new provisions permitting introduction of videotaped testimony before a Grand Jury" by expanding "the discovery provisions to include access to this new *Rosario*-type material" *(see,* Bellacosa, 1984 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 240.45, 1991 Supp Pamph, at 191).

CPL 240.45 now provides, in relevant part, that:

"1. After the jury has been sworn and before the prosecutor's opening address, or in the case of a single judge trial after commencement and before submission of evidence, the prosecutor shall, subject to a protective order, make available to the defendant:

"(a) Any written or recorded statement, including any testimony before a grand jury *and an examination videotaped pursuant to section 190.32 of this chapter,* made by a person whom the prosecutor intends to call as a witness at trial, and which relates to the subject matter of the witness's testimony" (emphasis added).

In light of the fact that the italicized language expressly requires an examination videotaped pursuant to CPL 190.32 to be made available to the defendant, the People concede on appeal that "technically, it may have been better had the prosecutor made available to the defendant the videotaped examination" of the child victim. However, the People nevertheless assert that their refusal to do so in this case did not constitute reversible error because the transcribed minutes of

her videotaped testimony, which were turned over to the defendant's attorney at the commencement of the trial, constitute the duplicative equivalent of the videotaped examination. We reject this contention.

In *People v Rosario* (9 NY2d 286, 289, *supra)*, the Court of Appeals held that "a right sense of justice" entitles a defendant to inspect the prior statements of a prosecution witness, prior to cross-examination, whether or not it varies from his or her testimony on the stand. The purpose of the rule is to " 'afford the defendant a fair opportunity to cross-examine the People's witnesses at trial' " *(People v Perez,* 65 NY2d 154, 158; *People v Poole,* 48 NY2d 144, 149). Since its formulation some 30 years ago, the *Rosario* rule has been periodically "refined * * * to ensure that a defendant 'receives the full benefit of a [prosecution] witness' statements for impeachment purposes' " *(People v Ranghelle,* 69 NY2d 56, 62, citing *People v Poole, supra).*

Despite the strong presumption of the discoverability of prior statements of prosecution witnesses under the *Rosario* rule, the Court of Appeals has recognized that there are "some commonsense limits to mandatory disclosure" *(People v Ranghelle, supra,* at 63; *see also, People v Young,* 172 AD2d 790; *People v Velez,* 161 AD2d 823). Thus, the court has held that the *Rosario* rule does not impose an obligation on the People to produce statements that are "duplicative equivalents of statements previously turned over to the defense" *(People v Consolazio,* 40 NY2d 446, 454; *People v Ranghelle, supra; see, People v Lumpkin,* 173 AD2d 738; *People v Williams,* 128 AD2d 912). For example, in *People v Consolazio (supra),* the court concluded that the prosecutor's failure to turn over certain worksheets, which contained notes summarizing a witness' responses to a questionnaire, did not violate the *Rosario* rule. In that case, the court found, based upon examination of the Grand Jury testimony of the various prosecution witnesses which had been turned over to the defense, that the statements contained in the worksheets were the same as the statements made by the witnesses before the Grand Jury. Under these circumstances, the court concluded that the worksheets were "nothing more than duplicative equivalents of statements previously turned over to the defense—the only difference being as to the particular form in which such statements were recorded. In this circumstance it was not error to fail to turn

over worksheets which would have been cumulative only" *(People v Consolazio, supra,* at 454).

Similarly, in *People v Mahones* (136 AD2d 745), this court concluded that the People's failure to turn over a police complaint report did not constitute *Rosario* error where the subject report was the "duplicative equivalent" of material previously given to the defendant *(People v Mahones, supra,* at 745). In so holding, the court noted that "[a] review of the complaint report in question reveals that the statement contained therein is an exact word-for-word transcription of a statement contained in another document which the People did turn over to the defense" *(People v Mahones, supra,* at 745). Moreover, in *People v Young* (172 AD2d 790, *supra),* this court rejected the defendant's contention that reversal was required based upon the prosecutor's failure to produce an "unusual occurrence report", which described the condition of the victim's body at the time it was found *(People v Young, supra,* at 790). In reaching this conclusion, the court observed that "[a]n examination of the subject form reveals that the information contained therein is duplicative of statements contained in other police reports and documents which were provided to the defense" *(People v Young, supra,* at 791).

In the case at bar, the transcribed minutes of the child victim's videotaped examination, which accurately reflect her Grand Jury testimony, are in a sense duplicative of the videotaped examination. However, we decline to hold that the mandate of CPL 240.45, which expressly requires the People to make both the videotape examination and the transcribed minutes available to the defendant, can be satisfied by production of the minutes alone. It is a basic tenet of construction that effect must be given, if possible, to every word, clause, and sentence of a statute, and that a court shall assume that every provision of the statute was intended to serve some useful purpose (McKinney's Cons Laws of NY, Book 1, Statutes § 231; *Matter of Bliss v Bliss,* 66 NY2d 382, 389; *Orange & Rockland Utils. v Hess Corp.,* 59 AD2d 110, 115). At bar, even prior to the amendment of CPL 240.45, the People would have been required to turn over to the defendant the transcribed minutes of the child's Grand Jury testimony. To hold that the production of such minutes satisfies the prosecutor's burden in this regard, as the People urge, would be to render the amendment of the statute, which added the language *"and* an examination videotaped pursuant to section 190.32" meaningless *(see,* CPL 240.45 [1] [a] [emphasis added]).

■ Moreover, the People's assertion that the transcribed minutes of the child's testimony are the duplicative equivalent of the videotape disregards the unique visual impact of a videotaped examination. As the defendant urges, a printed transcript cannot convey a child's testimony with the completeness of a videotaped examination, which captures gestures and facial expressions. This is particularly true in the instant case, where the victim was a young child who was incapable of fully verbalizing the abuse to which she was subjected. Indeed, we note that the child's testimony was primarily adduced through visual demonstration with anatomically correct dolls, and that her testimony was described and interpreted for the record by the Assistant District Attorney who presented the case. Like the child in this case, other young children may be unable to verbally describe the sexual offenses which may have been committed against them. Moreover, the use of anatomically correct dolls in connection with child sex abuse cases has become increasingly prevalent, and the essence of such a visual demonstration cannot be captured or otherwise replicated by transcribed minutes. Accordingly, we cannot agree that production of the transcribed minutes satisfies the People's burden under CPL 240.45, which explicitly requires production of the videotape. Providing the defendant with full access to the discovery material to which he is entitled pursuant to the statute will in no way undermine the over-all legislative goal of sparing children the trauma of personally testifying before the Grand Jury. Rather, requiring compliance with the statutory mandate serves to strike a fair balance between protecting the child witness and providing the defendant with the discovery necessary to prepare for trial.

III

■ In light of our determination that the People were required to make the videotape of the child's Grand Jury testimony available to the defendant, there remains the question of the appropriate sanction to impose for the failure to comply with the statute. In *People v Ranghelle (supra)*, the Court of Appeals concluded that when the People delay in producing *Rosario* material, the reviewing court must ascertain whether the defense was substantially prejudiced by the delay. Where, however, the prosecution fails completely in its obligation to deliver *Rosario* material to the defense counsel, "the courts will not attempt to determine whether any preju-

dice accrued to the defense. The failure constitutes *per se error* requiring * * * a new trial" *(People v Ranghelle, supra,* at 63 [emphasis added]). Explaining the rationale in declining to utilize harmless error analysis in *People v Jones* (70 NY2d 547), the Court of Appeals observed that "defense counsel 'is in a far better position [than the court or the prosecutor] to appraise the value of a witness' pretrial statements for impeachment purposes' " *(People v Jones, supra,* at 550). The court also held that "[i]t is *defense counsel alone* who [had] the responsibility for making the strategic judgments and doing the careful preparation required for planning and executing an effective cross-examination of the People's witnesses and deciding whether and how to use the statements" *(People v Jones, supra,* at 552). Thus, "[w]hen, as a result of the prosecutor's violation of the *Rosario* rule, defense counsel has been deprived of material of which he or she is unaware or cannot otherwise obtain, there is no way, short of speculation, of determining how it might have been used or how its denial to counsel might have damaged defendant's case" *(People v Jones, supra,* at 552). Therefore, although the People urge that the defendant was not prejudiced by the failure to turn over the videotape of the child's Grand Jury testimony, we must conclude that the prosecutor's complete failure to make the videotape available to the defendant constituted per se reversible error, and warrants a new trial.

## IV

■ Following his conviction under indictment number 2524/87, *inter alia,* of sodomy and sexual abuse in the first degree for the acts committed upon the six-year-old victim, the defendant pleaded guilty to attempted sexual abuse in the third degree in full satisfaction of indictment number 5840/87. As an inducement to plead guilty, the defendant was promised that he would receive an indeterminate term of 2 to 4 years' imprisonment, to run concurrently with the sentence imposed under indictment number 2524/87. In light of our reversal of the judgment under indictment number 2524/87, the promise of concurrent sentences cannot now be kept, and the defendant must be given the opportunity to withdraw his guilty plea under indictment number 5840/87 *(see, People v Fuggazzatto,* 62 NY2d 862, 863; *People v Clark,* 45 NY2d 432, 440; *People v Brower,* 171 AD2d 876; *People v Land,* 131 AD2d 883).

In view of the foregoing, the defendant's remaining contentions need not be addressed.

Accordingly, the judgments are reversed, on the law, a new trial is ordered under indictment number 2524/87, and the matter is remitted to the Supreme Court, Queens County, to afford the defendant the opportunity to withdraw his plea of guilty under indictment number 5840/87. The facts have been considered and are determined to have been established.

KUNZEMAN, J. P., KOOPER and O'BRIEN, JJ., concur.

Ordered the judgments are reversed, on the law, a new trial is ordered under indictment number 2524/87, and the matter is remitted to the Supreme Court, Queens County, to afford the defendant the opportunity to withdraw his plea of guilty under indictment number 5840/87. The facts have been considered and are determined to have been established.