UNITED STATES of America, Appellee,

v.

James GRANT; Raymond Copeland,
Defendants,

Bobby T. Benson, also known as Adetola
Adeosun, also known as James Jones,
Defendant–Appellant.

No. 206, Docket 94–1003.

United States Court of Appeals,
Second Circuit.

Argued Oct. 20, 1994.

Decided April 14, 1995.

Edgardo Ramos, Asst. U.S. Atty., Brooklyn (Zachary W. Carter, U.S. Atty., E.D.N.Y., David C. James, Asst. U.S. Atty., of counsel), for appellee.

Steven A. Feldman, Hauppauge (Feldman and Feldman, of counsel), for defendant-appellant.

Before: LEVAL and CABRANES, Circuit Judges.*

LEVAL, Circuit Judge:

Bobby Benson appeals from his conviction, following a jury trial, of one count of conspiracy to use unauthorized access devices, in violation of 18 U.S.C. § 1029(b)(2), and two counts of using unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(2). Benson argues that he was denied his right to a proper jury trial because, he contends, the trial judge absented himself from the courtroom during readbacks of testimony. Affirmed.

During deliberations, the jurors asked to have certain testimony read to them. The reading was expected to continue for two and one-half hours. The trial judge asked whether there would be an objection to his going in

* Judge Pratt, originally a member of the panel, resigned on January 31, 1995. The appeal is being decided by the remaining members of the panel pursuant to Local Rule § 0.14(b).

and out of the courtroom to fetch papers during the readbacks. Counsel did not object. The judge then explained to the jury that he might briefly leave the room "to bring in different paperwork" during the readbacks.

■ Because Benson did not object, he cannot sustain his claim on appeal unless he shows (i) plain error, (ii) resulting in prejudice. *See United States v. Olano,* ── U.S. ──, ──, 113 S.Ct. 1770, 1778–79, 123 L.Ed.2d 508 (1993). He has shown neither. For a judge to leave the bench while the jury hears a readback of testimony, without more, obviously involves no prejudice. Nor do we consider this to be error. While we do not encourage trial judges to absent themselves from the bench, *see United States v. Pfingst,* 477 F.2d 177, 196–97 (2d Cir.), *cert. denied,* 412 U.S. 941, 93 S.Ct. 2779, 37 L.Ed.2d 400 (1973), and recognize that absence under many circumstances would involve error, practical distinctions must be observed.

During deliberations the jury often asks to see or hear repetition of evidence previously introduced or instructions previously given. These requests may be satisfied in various ways, often not involving the presence of the court. Physical evidence is routinely sent into the jury room for inspection by jurors outside the presence of the court. Transcripts are often sent into the jury room to be read there by jurors. Recorded conversations are sent in with a tape player, films with a projector, as well as recorded or transcribed court instructions. In such instances, the jury hears, watches, or reads the material for a second time outside the judge's presence.

No good reason explains why the situation is materially different because such a replay occurs in the courtroom, rather than in the jury room. In either case, the jury is receiving nothing new—only a replay, either mechanically,or through a reading, of previously received evidence. There is nothing for the judge to rule on.

■ To be sure, if this takes place in the courtroom in the presence of attorneys, the defendant also has the right to be present; the judge may wish to be present both for symbolic reasons and to insure that no participant misbehaves in the jury's presence. But to say that there are reasons favoring the judge's presence is far short of saying that the judge commits error if he or she is ever absent.

Courts today are under enormous pressure to accomplish the huge volumes of work which our litigious society places on them. For a judge to sit idle in the courtroom during several hours of readbacks to the jury, performing little function other than the furnishing of a symbolic presence, deprives society of several hours of that judge's productive time.

■ In our view, a distinction should be made between the judge's necessary presence while functional proceedings are in progress, and a presence serving only to satisfy symbolic ritual. If courts are to discharge their responsibilities to society by accomplishing their work, they must not bind themselves by fetishistic rules that immobilize the judge, disabling him or her from performing useful judicial work, unless this is justified.

The pressures of modern life (together with technological advances) have brought about significant, perhaps long overdue, changes in judicial attitudes toward efforts to achieve efficiency in the conduct of trials. In 1969, this court expressed doubt whether it was proper for a judge to answer a jury's written question by sending back a written note, rather than delivering the answer "in open court in the presence of the defendant and his attorney ... in the proper atmosphere...." *United States v. Schor,* 418 F.2d 26, 29–30 (2d Cir.1969). In the same case, our court expressed doubt whether it was proper to honor a jury's request to inspect a witness's testimony in the jury room, rather than conduct the stately traditional courtroom reading. Today, twenty-five years later, it is commonplace for district court judges to send written answers to jury questions, after proper consultation with counsel in the presence of the defendant,[1]

1. *See United States v. Ronder,* 639 F.2d 931, 934 (2d Cir.1981) (judge should consult with counsel

rather than wasting 20 minutes of the time of nearly 20 people for a stately courtroom delivery. It is also commonplace to send transcripts into the jury room, rather than conduct lengthy readings.[2] In many instances, this is far preferable; it permits the jury to find, focus on, study, and discuss the passages that interest them, rather than forcing them to sit in silence, enduring lengthy, droning readbacks of testimony, most of which is often not pertinent to issues that concern them.

▉ Although courts have been slow to accept change, such changes of tradition have unquestionably improved the trial process. We should not assume that all practices that depart from tradition are *ipso facto* erroneous.

Benson seeks to support his argument by citation of federal and state authorities. We find them unconvincing.

▉ It is true that courts cited by the defendant, including the Supreme Court, have made sweeping statements that "trial by jury" requires "a jury of 12 men in the presence and under the superintendence of a judge," *Capital Traction Co. v. Hof*, 174 U.S. 1, 13, 19 S.Ct. 580, 585, 43 L.Ed. 873 (1899). *See also Freeman v. United States*, 227 F. 732 (2d Cir.1915); *People v. Parisi*, 276 N.Y. 97, 11 N.E.2d 554 (1937). However, these cases deal with the judge's role in the substantive conduct of functional portions of the trial—not mere symbolic presence during performance of mechanical repetitions. In *Capital Traction*, the Supreme Court held that a constitutional "trial by jury" must afford the opportunity to appear before a judge, not a justice of the peace. *Capital Traction*, 174 U.S. at 45–46, 19 S.Ct. at 597. In *Freeman*, the court held that it was error to substitute one judge for another during the progress of a criminal trial. *Freeman*, 227 F. at 743–44, 759. *Parisi* held that the district judge erred when he left the room while counsel was making objections. *Parisi*, 276 N.Y. at 100, 11 N.E.2d at 555. Those

authorities are unquestionably correct as to the need for a judge to conduct a trial before a jury. It does not necessarily follow that the judge's presence is essential while the jury is hearing a re-reading of previously received testimony.

Benson mischaracterizes federal precedent when he contends that *Schor* and *Evans v. United States*, 284 F.2d 393 (6th Cir.1960), expressed disapproval of readbacks in the absence of the judge. Although the *Schor* opinion made reference in a footnote to that issue arising in *Evans*, *Schor* did not involve the issue at all. *Schor*, 418 F.2d at 30 n. 4. It dealt with the propriety of answering a jury's inquiry (i) without offering counsel adequate opportunity to comment, (ii) without respecting the right of the defendant to be present at any discussion of what the answer should be, and (iii) as noted above, by transmission of the judge's written answer to the jury room, rather than oral delivery of the answer in open court. *Id.* at 29–30. *Evans* did, indeed, involve the question of the propriety of the judge's absence during a readback. However, because the Court of Appeals found error elsewhere, it expressly declined to rule on the issue of the judge's absence. *Evans*, 284 F.2d at 395.

As to his citation of New York State authorities, Benson mischaracterizes the holding of *People v. Ahmed*, 66 N.Y.2d 307, 487 N.E.2d 894, 496 N.Y.S.2d 984 (1985), when he contends that the Court of Appeals reversed a conviction because the trial judge, who had a bad cold, "remained in the courtroom, but, with the consent of the parties, [had] the court reporter and the judge's law secretary reread portions of the transcript and the charge in response to requests from the jury." It is true that those things occurred, but there was much more. Because of the judge's illness, he "allow[ed] his law secretary to discharge some of his duties"; two of the jury's questions were answered by the law secretary (while two more were not answered at all). *Ahmed*, 487 N.E.2d at 896, 496 N.Y.S.2d at 986.

before responding to jury question).

**2.** Undoubtedly, the anomaly that juries conventionally viewed exhibits, but not transcripts of testimony, outside the judge's presence had its origins in the technical difficulty, before the advent of computers, in producing rapidly a transcript with objections and colloquy redacted.

Benson does correctly cite two holdings of the Appellate Division, Second Department, that a judge's absence during readback of testimony is error. *See People v. Lumpkin,* 173 A.D.2d 738, 570 N.Y.S.2d 620 (2d Dep't 1991); *People v. Rawlings,* 178 A.D.2d 619, 577 N.Y.S.2d 493 (2d Dep't 1991). In each case, the judge, with consent of counsel, worked in an adjacent room during the readback of testimony, ready to return immediately if any problem arose. The Second Department held that this practice "does not comport with the Judge's supervisory role, or with the established expectations and conventions that underlie the judicial function." *Lumpkin,* 570 N.Y.S.2d at 622; *see also Rawlings,* 577 N.Y.S.2d at 494. For the reasons given above, we do not agree. We conclude that Judge Wexler committed no error.[3]

■ Benson makes the related claim that the trial judge "delegated a judicial function to the jurors" when he told the jury to tell the reporter to go faster or slower as they listened to testimony readbacks. While a trial judge must employ careful procedures when handling substantive communications from the jury, *see Ronder,* 639 F.2d at 934, requests to speed up or slow down the reading of testimony, or speak louder, do not implicate the same concerns. In any event, no such communication took place between the jury and the court reporter.

We have considered the rest of Benson's claims and find them to be without merit. Affirmed.[4]

---

**3.** Indeed, the record does not reflect whether Judge Wexler ever in fact left the bench, as he said he would.

**4.** This opinion has been circulated among the judges of this court prior to filing.