The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Robert C. SALYER, Defendant–Appellant.

No. 01CA0311.

Colorado Court of Appeals,
Div. IV.

Feb. 13, 2003.

Rehearing Denied April 24, 2003.

Certiorari Denied Dec. 1, 2003.*

* Justice MARTINEZ would grant as to the following issues:

Whether the admission of testimony and prosecutorial argument in a drug possession case, alleging that the defendant was a suspected murderer, a thief, doped up 12-year-olds, and preyed on victims of the Columbine tragedy, deprived defendant of a fair trial.

Whether the court of appeals erroneously determined that a judge's absence from more than one day of the evidentiary portion of the trial does not constitute structural error.

Ken Salazar, Attorney General, Patricia R. Van Horn, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Nancy J. Lichtenstein, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Robert C. Salyer, appeals the judgment of conviction entered upon a jury verdict finding him guilty of possessing marijuana with the intent to distribute it, a class four felony. We affirm.

Defendant was eighteen years, nine months of age when, on February 14, 2000, two high school students were murdered at a store where he had been earlier that evening and at where he had previously worked. The next day, defendant was interviewed by law enforcement authorities, who suspected that the murders were drug related. During the interview, defendant admitted that he had sold marijuana for the past six months at the store. However, he said that after hearing about the murders, he removed a half pound of marijuana and a scale from his truck and "stashed" them in a field near an elementary school. He led the sheriff's officers to those items, telling them that because of the murders, he no longer planned to sell marijuana.

Defendant was interviewed again three days later by the sheriff's officers. He was subsequently arrested after refusing to participate in an undercover drug operation and alerting his source of drugs about the direction of the homicide investigation.

At trial, defendant argued that, although he possessed the half pound of marijuana, he did not intend to sell it and that it would, in any event, be unfair to convict him after he had been led to believe that, because of his cooperation in the homicide investigation, he would not be prosecuted for drug offenses.

The jury found defendant guilty of both possessing marijuana and possessing marijuana with the intent to distribute it. The trial court merged the verdicts and sentenced him to eighteen months probation on the greater crime.

## I. Information

Initially, defendant contends that the information was insufficient to invoke the jurisdiction of the trial court. We disagree.

As pertinent here, to invoke the jurisdiction of the trial court, an information must: (1) contain information from which it can be understood that the offense was committed within the jurisdiction of the court or is triable therein; and (2) provide adequate notice of the charge, as well as the factual circumstances surrounding the offense, so that the defendant can adequately defend himself or herself and the trial court can pronounce judgment upon a conviction. *See* § 16–5–202(1)(c), (d), C.R.S.2002; *People v. Williams,* 984 P.2d 56, 60 (Colo.1999).

Relying on *Bustamante v. District Court,* 138 Colo. 97, 329 P.2d 1013 (1958), *overruled in part on other grounds by County Court v. Ruth,* 194 Colo. 352, 575 P.2d 1 (1977), defendant argues that the information was jurisdictionally defective because it encompassed a period when he was a juvenile. Defendant asserts that as in *I.R. v. People,* 171 Colo. 54, 56, 464 P.2d 296, 297 (1970), the juvenile court has exclusive jurisdiction. We are not persuaded.

In *Bustamante,* the defendant was charged with committing a crime between two specific dates, one of which was beyond the applicable statute of limitations for the crime charged. The supreme court concluded that where the charging document "avers two dates, one of which is so remote as to be barred by the statute of limitations, it is defective" and beyond the jurisdiction of the court. *Bustamante v. District Court, supra,* 138 Colo. at 105, 329 P.2d at 1017.

Here, the information does not reference two dates, one of which would necessarily be beyond the jurisdiction of the trial court. Instead, it references but one date, February 14, 2000. Because that date fell nine months after defendant became an adult, and because the allegation stated "on *and* before" that date, we conclude that the information was sufficient to invoke the trial court's jurisdiction over criminal cases. *See* Colo. Const. art. VI, § 9 (district courts have original jurisdiction in criminal cases, except as provided by law); § 19–2–104(7); C.R.S.2002 (juvenile court lacks jurisdiction "over a person

for any offense committed after the person attains the age of eighteen years").

■ Defendant also argues that the time allegation in the information was not sufficient to provide him with adequate notice of the charged offense. We disagree.

■ Ordinarily, an information need only answer the questions of "who, what, where, and how." *See People v. Steiner,* 640 P.2d 250, 252 (Colo.App.1981); *cf. People v. Tucker,* 631 P.2d 162, 163 (Colo.1981)(indictment). The prosecution is not required to specify the precise date of an alleged offense unless that date is a material element of the offense. *See Roelker v. People,* 804 P.2d 1336, 1340 (Colo.1991); *see also Marn v. People,* 175 Colo. 242, 247–48, 486 P.2d 424, 427 (1971).

■ Because a specific date is not an element of the crime of possessing marijuana with intent to distribute it, *see* § 18–18–406(8)(b)(I), C.R.S.2002, here any indefiniteness regarding time was a matter of form, which did not deprive the court of jurisdiction and would not warrant reversal absent substantial prejudice to the defendant. *See People v. Williams, supra,* 984 P.2d at 63–65.

We discern no such prejudice in this case. Defendant neither complained in the trial court of an insufficiency in the information nor requested a bill of particulars, for good reason: the "on *and* before February 14, 2000" allegation was sufficient to apprise him that the charge related only to the marijuana recovered by sheriff's officers on February 15, 2000. His claim of surprise, raised for the first time on appeal, based on an alleged inability to defend against charges of prior acts, is unavailing: those acts were not the basis of the charge, and the record does not reflect that he was unprepared for or surprised by evidence of the prior acts.

Defendant's reliance on *People v. Thimmes,* 643 P.2d 780 (Colo.App.1981), is misplaced. In *Thimmes,* the division concluded that the indictment was fatally deficient because it failed to allege "*any* date upon which the alleged offense was committed." *See People v. Thimmes, supra,* 643 P.2d at 782 (emphasis added). Here, in contrast, an ac-

tual date was alleged, namely "on and before February 14, 2000."

Thus, we conclude the information was sufficient.

## II. Voluntary Statements

■ Defendant contends that the trial court erroneously admitted statements that the sheriff's officers had involuntarily extracted from him by: (a) deliberately exploiting his emotional vulnerability over the deaths of friends; and (b) assuring him, near the beginning of his February 15, 2000, interview, that they were interested in solving a murder and not in his drug activity. We find no basis for reversal.

In the trial court, defendant grounded his motion to suppress only on evidence and argument concerning sheriff's officers' statements made to him and his father *following* the conclusion of the interview and the recovery of the marijuana. During the suppression hearing, he never asserted that psychological intimidation or earlier assurances by the authorities rendered his statements involuntary.

Inasmuch as the grounds upon which defendant now relies for relief were not raised in the trial court, we decline to consider them. *See People v. White,* 2002 WL 1339115, 64 P.3d 864, 869 (Colo.App. No. 99CA2415, June 20, 2002)(issues not raised in fourth amendment suppression hearing need not be addressed on appeal).

## III. Videotape Evidence Procedures

Defendant contends that reversal is required by certain irregularities surrounding the jury's viewing of his videotaped statements during the trial. According to defendant: (1) the court's comments to the jurors concerning the videotape evidence improperly diminished the dignity and seriousness of the trial and the role of the jury and also were made in the absence of defense counsel; and (2) the judge's absence during the playing of the videotapes was structural error. We are not persuaded that reversal is required.

## A. Court's Comments

■ The trial court met with the jurors for a few minutes to discuss the procedure for viewing defendant's videotaped statements. From the record, it appears that this meeting was conducted without defense counsel being present.

At this meeting, the court informed the jurors that it would take longer than originally anticipated to view evidence of defendant's videotaped statements and that, instead of finishing the case as expected on that day, the jurors would spend most of the day watching videotapes on television. The court mentioned that, in contrast to the situation where live witness testimony was being presented, it would permit jurors to have candy, drinks, and lunch in the courtroom while the videotapes were played. The goal, the court said, was to make the jurors comfortable while watching the videotapes.

Read in context, the remark about watching television conveyed nothing more than appropriate information about the medium by which the videotape evidence would be presented; and the remarks about allowing candy, drinks, and lunch—or even the remark about renting a movie theater made in response to one juror's quip about getting couches—did not convey a sense that the jurors need not be attentive or that this evidence was less important than other evidence in the case. Rather, the court's remarks were an attempt to preserve the attentiveness of the jury by making them comfortable about the prospect of viewing videotape evidence over a prolonged time.

However, relying on *Key v. People*, 865 P.2d 822, 825 (Colo.1994), defendant asserts the trial court erred, at the very least, in discussing these matters outside the presence of defense counsel. Even if under *Key* such discussions constituted a critical stage of the proceeding to which the right to counsel attached, we view any error here to be harmless beyond a reasonable doubt.

Defense counsel, who was immediately informed of the substance of the trial court's discussion with the jury, did not request any precautionary or curative measures. The court's discussion with the jury is a matter of record, and we perceive no prejudice to defendant arising therefrom. Cf. *Key v. People, supra,* 865 P.2d at 827 (court's scheduling conference with jurors carried potential for coercing jurors into joining verdict; evidence of guilt was not overwhelming, and had counsel been present at conference, he could have observed and recorded juror reactions to the court's decision).

## B. Judge's Absence from Courtroom

With the parties' consent, the judge was absent during part of the time the videotapes were played.

The videotapes were approximately seven hours in length. From the record, we cannot tell how much time the judge was absent or present in the courtroom; his plan was to rotate the supervision of the viewing among himself and two members of his staff.

We recognize that, because there is ordinarily little that trial judges can do or expect to do during the reception of videotape evidence, they may well be tempted to find more productive uses of their time than simply sitting through the presentation of videotape evidence. *See State v. Patterson,* 31 Conn.App. 278, 303, 624 A.2d 1146, 1159 (1993)(use of judges' time away from the courtroom during trial "to write memorandums of decision, to write jury charges, and to fulfill their myriad responsibilities" is "no doubt symptomatic of the pressures on the judiciary to control and move the overcrowded docket as quickly and effectively as possible"), *rev'd,* 230 Conn. 385, 645 A.2d 535 (1994); *see also United States v. Grant,* 52 F.3d 448, 449 (2d Cir.1995)("Courts today are under enormous pressure to accomplish the huge volumes of work which our litigious society places on them. For a judge to sit idle in the courtroom during several hours of readbacks to the jury, performing little function other than the furnishing of a symbolic presence, deprives society of several hours of that judge's productive time.").

■ Nonetheless, a trial judge's presence during a criminal trial is an integral component of a defendant's constitutional rights to a jury trial and a fair trial. *See, e.g., Riley v. Deeds,* 56 F.3d 1117, 1119 (9th Cir.1995)("The

presence of a judge is at the 'very core' of the constitutional guarantee of trial by an impartial jury."); *People v. Vargas,* 174 Ill.2d 355, 364, 220 Ill.Dec. 616, 673 N.E.2d 1037, 1041 (1996)("a judge's active presence on the bench during a criminal jury trial is an essential safeguard which aids in providing a defendant with a fair trial").

■ Consequently, as the supreme court recognized in *People v. Garcia,* 826 P.2d 1259, 1265–66 (Colo.1992), it is error for a judge to be absent from the courtroom and outside the hearing and sight of counsel and the jury while videotape evidence is being presented at trial.

■ Here, we cannot tell from the record whether the judge, while absent from the bench, remained within hearing and sight of counsel and the jury at all times during the presentation of the videotape evidence. And, we cannot presume that he did. Consequently, in accord with *Garcia* and the other authorities cited above, we conclude that constitutional error occurred when the judge left the courtroom during the playing of the videotape evidence.

Constitutional error ordinarily falls into one of two of categories: trial or structural. *Griego v. People,* 19 P.3d 1, 7 (Colo.2001). As a division of this court noted:

> Trial errors are those that may be quantitatively assessed in the context of other evidence presented and are therefore subject to harmless and plain error analyses. Structural errors are the consequences of a defect in the trial that is necessarily unquantifiable and indeterminate, rendering the entire trial fundamentally unfair and warranting automatic reversal.

*People v. Geisendorfer,* 991 P.2d 308, 310 (Colo.App.1999).

Courts around the country have split over whether a judge's absence from the courtroom during a critical stage of a criminal case qualifies as structural error. In those cases where structural error has not been found, "there has been either a finding of express or implied waiver of the right to the judge's presence, or a determination that the judge, while technically absent, remained in

'effective control' of the proceedings." *Riley v. Deeds, supra,* 56 F.3d at 1121.

Indeed, in *United States v. Mortimer,* 161 F.3d 240, 241 (3d Cir.1998), the court explicitly recognized that "[t]he structure [of a trial] normally stands if the parties consent to excuse the presence of a judge." *Cf. Commonwealth v. Burnett,* 428 Mass. 469, 702 N.E.2d 803, 807 (1998)("even structural error is subject to the doctrine of waiver"). Our caselaw is in accord with the principle articulated in *Mortimer.*

In *People v. Garcia, supra,* 826 P.2d at 1266, the supreme court recognized that a judge's absence from the courtroom with the parties' consent during the playing of videotape evidence could qualify as harmless error. The fact that the supreme court did so, despite citing *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), a case prominently discussing structural error, persuades us that the supreme court rejected the conclusion that structural error occurs when, as here, the judge leaves the courtroom with the consent of the parties.

■ Because the constitutional error here is not structural in nature, it is subject to harmless or plain error analysis. *See Griego v. People, supra,* 19 P.3d at 8–9. Like the court in *Garcia, supra,* we conclude that the error in this case was harmless beyond a reasonable doubt. The record reflects that the judge was present on the few occasions when issues came up concerning the logistics of playing the videotapes for the jury. No objection was made while or after the videotapes were played. And the court did not delegate to others the authority to exercise any judicial function, such as entering judgment, issuing rulings, or presiding over argument.

We reject defendant's assertion that the judge's absence was not harmless because, not having viewed all the videotape evidence, he was not in a position to properly rule on a motion for judgment of acquittal. Defendant does not direct our attention to any exculpatory material in the videotapes, and the trial court otherwise had ample evidence before it, in the form of live witness testimony, to deny defendant's motion for acquittal.

We wish to emphasize that it is error of constitutional magnitude for a judge, even with the parties' consent, to absent himself or herself from the courtroom during the presentation of evidence to a jury. In this case, the error happened to be harmless beyond a reasonable doubt; in other cases, it might well require reversal on appeal.

### IV. Other Bad Acts

Defendant contends that reversal is required because the trial court improperly admitted other bad acts evidence and allowed prosecutorial misconduct, related to this evidence, to occur during closing argument. We are not persuaded.

### A. Evidence

■ Initially, defendant argues that the trial court erred in admitting evidence indicating that he had been a suspect in the homicide investigation, stolen money from the store, and dealt drugs in the past. We disagree.

Inasmuch as the homicide investigation was the mechanism by which the sheriff's officers came into contact with and obtained critical evidence about this case from defendant, the jury could not be expected to understand how this case unfolded without receiving at least some information about it. See People v. Quintana, 882 P.2d 1366, 1373 (Colo.1994)(admissibility of res gestae evidence).

We reject defendant's assertion that the jury should not have been told that he might have been, or might still be, a suspect in the homicide, or that he stole money from the store where the murders were committed. In his opening statement and cross-examination of witnesses, defendant referred to his having been a homicide suspect; and references to the murder and the theft were otherwise admitted via his videotaped statements, which he insisted be shown in their entirety to permit the jury to understand and assess how he had been treated by the police. Because defendant chose, as a matter of strategy, to inject this evidence into the case, he cannot, under the invited error doctrine, now complain about it on appeal. See, e.g.,

People v. Stewart, 55 P.3d 107, 119 (Colo. 2002).

■ With respect to evidence of other drug activity, the prosecution introduced defendant's videotaped admissions and the testimony of three witnesses that defendant had previously sold marijuana to others. The court admitted this evidence without either conducting a hearing on its admissibility or providing the jury with a limiting instruction.

Defendant did not object to the admission of the evidence, the lack of a hearing, or the lack of a limiting instruction. Consequently, reversal is not warranted absent a showing of plain error. See Crim. P. 52(b); People v. Kruse, 839 P.2d 1, 3 (Colo.1992).

Plain error is error that is obvious, substantial, and grave. It exists when, after a review of the entire record, a court can conclude with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. Moore v. People, 925 P.2d 264, 268–69 (Colo. 1996).

■ Plain error did not occur here. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show that he or she acted in conformity therewith. Such evidence is admissible, however, for other purposes, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. CRE 404(b); Masters v. People, 58 P.3d 979, 995 (Colo.2002).

Here, evidence of defendant's prior drug dealing qualified for admission because it tended to show, apart from any prohibited inference of bad character, that defendant possessed the marijuana recovered by the sheriff's officers with intent to distribute it. The evidence was particularly appropriate in light of defendant's argument that he did not intend to distribute the marijuana. See also United States v. Vaughn, 267 F.3d 653, 659 (7th Cir.2001)("proof of uncharged acts of drug trafficking are [sic] relevant and probative of whether a defendant had the intent to distribute drugs in his possession"). And the evidence was not of such nature as would create overmastering hostility in the jury

toward defendant. Consequently, we perceive no error, much less plain error, in its admission. *See generally People v. Rath,* 44 P.3d 1033, 1041 (Colo.2002).

Because no error was occasioned by the admission of the evidence, plain error did not arise from the lack of a hearing to determine its admissibility. *See People v. Thompson,* 950 P.2d 608, 614 (Colo.App.1997). Nor did plain error arise from the lack of a limiting instruction. *See People v. Pineda,* 40 P.3d 60, 67 (Colo.App.2001).

## B. Argument

■■■ Defendant argues that the prosecutor unduly highlighted the shootings at Columbine High School, which defendant, a number of the witnesses testifying to defendant's prior drug dealing, and the two homicide victims had attended. Defendant also asserts error based on the prosecution's comments that defendant distributed drugs to and "doped up" twelve-year-olds and "essentially cheat[ed] his employer and [sold] drugs at the same time." However, inasmuch as defendant objected to none of these remarks, reversal is not warranted absent a showing of plain error. *See People v. Kenny,* 30 P.3d 734, 741–42 (Colo.App.2000).

■■■ To qualify as plain error, prosecutorial misconduct not only must be flagrant or glaringly or tremendously improper, but also must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *People v. Gordon,* 32 P.3d 575, 581 (Colo. App.2001).

■■■ Claims of improper argument must be evaluated in the context of the argument as a whole and in light of the evidence before the jury. *People v. Kerber,* 2002 WL 31600882, 64 P.3d 930 (Colo.App. No. 01CA1173, Nov. 21, 2002). Prosecutors are entitled to comment on the evidence presented, *see People v. Griffith,* 58 P.3d 1111, 1113 (Colo.App.2002), and they are allowed considerable latitude in responding to defense counsel's arguments. *People v. Kenny, supra,* 30 P.3d at 741.

Here, the prosecutor's comments were grounded in the evidence and largely responsive to defense arguments that were intended to elicit sympathy from the jury, specifically, arguments about the devastating impact of the Columbine shootings and the unfairness of prosecuting defendant after he cooperated with law enforcement.

We do not condone all of the prosecutor's remarks. Yet, when viewed in context and particularly in light of the Columbine comments and the fairness argument made by defense counsel, they were not so egregious and prejudicial as to constitute plain error. *See People v. Gordon, supra,* 32 P.3d at 581.

## V. Jury Unanimity

■■■ Finally, defendant contends that the trial court deprived him of a unanimous jury verdict. We disagree.

When evidence of many acts is presented, any one of which could constitute the offense charged, and there is a reasonable likelihood that jurors may disagree on the act the defendant committed, the trial court must take one of two actions to ensure jury unanimity. The court must either require the prosecution to elect the transaction on which it relies for conviction, or instruct the jury that to convict the defendant it must unanimously agree that the defendant committed the same act or committed all the acts included with the period charged.

The requirement of an election or a modified unanimity instruction assures that a conviction does not result from some members of the jury finding the defendant guilty of one act, while others convict based on a different act.

*People v. Rivera,* 56 P.3d 1155, 1159–60 (Colo.App.2002) (citations omitted).

■■■ Here, the trial court neither required an election between or among acts nor provided the jury with a modified unanimity instruction. However, because defendant requested neither action by the trial court, reversal is not warranted in the absence of plain error. *See People v. Rivera, supra,* 56 P.3d at 1159.

In *Rivera, supra,* 56 P.3d at 1160, the division found plain error when the trial court neither required an election nor provid-

ed a modified unanimity instruction. There, because of the defendant's greatly varying types of involvement in several different transactions, a substantial likelihood existed that jurors could disagree regarding which act or acts supported the conviction.

Here, in contrast, there were but two types of illegal transactions: the first involving the marijuana recovered by the sheriff's officers on February 15, 2000, and the second involving the prior sales or gifts to others of purported marijuana.

The parties referenced both types in their closing arguments. However, both sides focused on the marijuana recovered by the sheriff's officers. At several points in the short closing argument, the prosecution applied the elements instruction to the recovered marijuana; and, in his closing argument, defendant chose, as a tactical matter, to acknowledge his guilt of only a lesser included offense in connection with the same transaction.

Given the parties' arguments, we find no reasonable likelihood that the jury's verdict could have been based on an act or acts other than that involving the recovered marijuana. Consequently, reversal is not warranted on this ground. *See People v. Lawrence*, 55 P.3d 155, 164–65 (Colo.App.2001)(rejecting finding of plain error where it was "unlikely that jurors could disagree or be confused as to which acts ... defendant committed or assisted in").

Accordingly, the judgment is affirmed.

Judge ROTHENBERG and Judge KAPELKE concur.