The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Oscar HINOJOS–MENDOZA, Defendant–Appellant.

No. 03CA0645.

Colorado Court of Appeals, Div. II.

July 28, 2005.

Rehearing Denied Nov. 10, 2005.

Certiorari Granted Aug. 14, 2006.

John W. Suthers, Attorney General, Karen E. Lorenz, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

WEBB, J.

Defendant, Oscar Hinojos–Mendoza, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession with intent to distribute one thousand grams or more of a schedule II controlled substance, under a former version of § 18–18–405(3)(a), C.R.S.2004. Defendant also appeals his sentence of sixteen years in the Department of Corrections (DOC). We affirm.

According to the People's evidence, a person (informant) who had just been arrested on drug charges agreed to cooperate with the police and arranged through a telephone call made in their presence to purchase a kilogram of cocaine from his supplier, "Oscar." Approximately forty-five minutes later, defendant arrived in a vehicle that had been described by the informant as belonging to his supplier and honked. The officers contacted defendant, searched his vehicle, and found a plastic bag containing a tape-wrapped block of cocaine under the front seat.

At trial, defendant admitted that he drove to the arranged location, parked, and honked his horn in response to the informant's telephone call. But he asserted that he had done so for the purpose of collecting an outstanding debt from the informant.

Defendant's wife offered some corroborating testimony. Defendant did not dispute that the police found cocaine in his truck. However, he denied knowledge of the cocaine, explaining that the informant had used his truck the night before. Defendant also argued that the quantity of cocaine had not been proved beyond a reasonable doubt.

### I. Laboratory Report

Defendant first contends that § 16–3–309(5), C.R.S.2004, which allows laboratory reports to be received in evidence, is unconstitutional on its face and as applied to him because it violates his Sixth Amendment right of confrontation under *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). We disagree.

The right of an accused to confront the witnesses against him is a fundamental constitutional right included in both the United States and Colorado Constitutions. *See* U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16; *Crawford v. Washington, supra; Compan v. People,* 121 P.3d 876, 2005 WL 2415958 (Colo. No. 04SC422, Oct. 3, 2004); *People v. Fry,* 92 P.3d 970 (Colo.2004).

■ Under the Confrontation Clause, if an out-of-court statement made by a nontestifying witness is testimonial, it may be admitted for truth in a criminal trial only if the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v.Washington, supra; Compan v. People, supra; People v. Fry, supra.*

Section 16–3–309(5) allows courts to admit any report or finding of a criminalistics laboratory "with the same force and effect as if the employee or technician of the criminalistics laboratory who accomplished the requested analysis, comparison, or identification had testified in person." However, a defendant may demand that the technician testify in person "by notifying the witness and other party at least ten days before" the trial.

■ Under this statute, if the defendant does not give pretrial notice, the People may prove an element of the charge using a laboratory report either "by subpoenaing the [technician] and presenting her at trial, or by simply introducing the lab report." *People v. Mojica–Simental,* 73 P.3d 15, 18 (Colo.2003); *see People v. Moses,* 64 P.3d 904, 908 (Colo.App.2002)("Forensic laboratory reports are admissible in criminal proceedings without establishing the usual foundation, absent a request that the technician be made available at trial.").

Here, the People sought to introduce a laboratory report as to the "tan tape wrapped block containing 1004.5 grams of compress white powder ... [which when tested] disclosed the presence of cocaine, schedule II." Defendant objected that the report was "a hearsay document." The court

asked defense counsel whether he had requested the laboratory technician to testify. Counsel responded that he had not because he was unaware of the notice requirement under § 16–3–309(5). The People did not dispute this assertion. The court then overruled defendant's objection and admitted the report.

### A. Preservation of Issue

■ Initially, we do not entertain challenges to the constitutionality of a statute raised for the first time on appeal. *People v. Boyd,* 30 P.3d 819 (Colo.App.2001) (citing *People v. Cagle,* 751 P.2d 614 (Colo.1988)(facial unconstitutionality); *People v. Perea,* 74 P.3d 326 (Colo.App.2002)(unconstitutional as applied).

Here, defendant did not challenge the constitutionality of § 16–3–309(5), either facially or as applied, in the trial court. Accordingly, we will not address that issue for the first time on appeal.

Under the particular facts presented, we decline to address the People's assertion that defendant's general hearsay objection did not properly preserve a confrontation issue for review.

If an appeal is taken, the conviction becomes final when the appellate process ends. *People v. White,* 804 P.2d 247 (Colo.App. 1990).

■ Until a conviction is final, the defendant may raise a challenge based on "a substantial change in the law." *People v. White, supra,* 804 P.2d at 249; *cf. People v. Banks,* 924 P.2d 1161 (Colo.App.1996)(a change of law does not apply to a defendant whose direct appeal ended before announcement of the new case).

The *Crawford* majority pointed out that in response to the state's reliance on the hearsay exception for statements against penal interest, the defendant "countered that, state law notwithstanding, admitting the evidence would violate his federal constitutional right to be 'confronted with the witnesses against him.' ' *Crawford v. Washington, supra,* 541 U.S. at 40, 124 S.Ct. at 1358.

Some Colorado cases construe general hearsay objections broadly. *See People v. Harris,* 43 P.3d 221, 230 (Colo.2002)(quoting *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980): "The confrontation right and hearsay rules 'stem from the same roots' . . . ."); *cf. Blecha v. People,* 962 P.2d 931 (Colo.1998). But substantial contrary authority exists. *See, e.g., United States v. Solomon,* 399 F.3d 1231 (10th Cir. 2005); *see also United States v. Chau,* 426 F.3d 1318, 2005 WL 2347210 (11th Cir. No. 05–10640, Sept. 27, 2005).

In any event, we need not resolve this question because, even if defendant is entitled to a review under *Crawford* of the ruling admitting the laboratory report, he is not entitled to relief under *Crawford.*

### B. *Crawford v. Washington*

■ We consider the effect of *Crawford v. Washington, supra,* on the laboratory report and conclude that because the report is nontestimonial, *Crawford* does not require its exclusion.

Although the *Crawford* majority declined to "spell out a comprehensive definition of 'testimonial,' ' *Crawford v. Washington, supra,* 541 U.S. at 68, 124 S.Ct. at 1374, it quoted Webster's *An American Dictionary of the English Language* (1828) definition of "testimony" as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford v. Washington, supra,* 541 U.S. at 51, 124 S.Ct. at 1364. The majority held that, at a minimum, "testimonial" applies to statements made at preliminary hearings, before grand juries, at a former trial, and during police interrogations.

In *Compan v. People, supra,* 121 P.3d at 880, the court declined to decide "whether to adopt any or all of these potential categories of testimonial evidence postulated by the Supreme Court [in *Crawford* ]" because the hearsay at issue in *Compan* did not "fit within them."

The *Crawford* majority also explained: "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their devel-

opment of hearsay law—as does [*Ohio v. Roberts, supra* ], and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." *Crawford v. Washington, supra,* 541 U.S. at 68, 124 S.Ct. at 1374. The majority added, "Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy." *Crawford v. Washington, supra,* 541 U.S. at 56, 124 S.Ct. at 1367.

In *People v. Shreck,* 107 P.3d 1048, 1060 (Colo.App.2004), a division of this court held that documents showing the defendant's prior convictions were nontestimonial official records "of a type not subject to the requirements of *Crawford.*" Although the division analogized these public records to business records, which it suggested were not within the category of testimonial statements, no Colorado appellate case has expressly decided whether business records are exempt from the requirements of *Crawford v. Washington, supra.*

A majority of jurisdictions hold that laboratory reports and similar documents are nontestimonial business or public records. *See, e.g., People v. Johnson,* 121 Cal.App.4th 1409, 18 Cal.Rptr.3d 230 (2004)(laboratory reports routine and nontestimonial documents); *Commonwealth v. Verde,* 444 Mass. 279, 827 N.E.2d 701 (2005)(laboratory report on weight of cocaine a business record); *State v. Dedman,* 136 N.M. 561, 102 P.3d 628 (2004)(blood alcohol content reports nontestimonial); *People v. Brown,* 9 Misc.3d 420, 801 N.Y.S.2d 709 (2005)(DNA testing records nontestimonial); *People v. Kanhai,* 8 Misc.3d 447, 797 N.Y.S.2d 870 (Crim. Ct.2005)(breathalyzer test results regular business records); *People v. Durio,* 7 Misc.3d 729, 794 N.Y.S.2d 863 (2005) (autopsy reports business records); *Moreno Denoso v. State,* 156 S.W.3d 166 (Tex.App.2005)(autopsy reports nontestimonial); *Luginbyhl v. Commonwealth,* 46 Va.App. 460, 618 S.E.2d 347 (2005)(*petition for rehearing en banc granted* Sept. 27, 2005)(report from breathalyzer machine and technician's certificate of calibration business records); *cf. Frazier v. State,* 907 So.2d 985 (Miss.Ct.App.2005)(pen-packs

nontestimonial); *People v. Brown,* 5 Misc.3d 440, 785 N.Y.S.2d 277 (2004)(statements in presentencing report nontestimonial).

In *Commonwealth v. Verde, supra,* 444 Mass. at 283, 827 N.E.2d at 705, for example, the court explained that "[c]ertificates of chemical analysis are neither discretionary nor based on opinion; rather, they merely state the results of a well-recognized scientific test determining the composition and quantity of the substance." Thus, the court concluded, "we do not believe that the admission of these certificates of analysis implicate[s] 'the principal evil at which the Confrontation Clause was directed." ' *Commonwealth v. Verde, supra,* 444 Mass. at 284, 827 N.E.2d at 706 (quoting *Crawford, supra,* 541 U.S. at 50, 124 S.Ct. at 1354).

Defendant urges us to follow a minority of cases that treat as testimonial under *Crawford* various documents prepared at the behest of law enforcement. *See, e.g., Johnson v. State,* —— So.2d ——, 2005 WL 2138714 (Fla.Dist.Ct.App. No. 2D04–3460, Sept. 7, 2005)(lab report prepared pursuant to police investigation testimonial); *Belvin v. State,* —— So.2d ——, 2005 WL 1336497 (Fla. Dist. Ct.App. No. 4D04–4235, June 8, 2005)(affidavit concerning defendant's blood alcohol level testimonial); *City of Las Vegas v. Walsh,* 120 Nev. 392, 91 P.3d 591, *modified,* 100 P.3d 658 (Nev.2004)(nurse's affidavit regarding circumstances of blood draw testimonial); *People v. Capellan,* 6 Misc.3d 809, 791 N.Y.S.2d 315 (Crim. Ct.2004)(affidavit of motor vehicle records manager concerning defendant's driving record testimonial); *People v. Hernandez,* 7 Misc.3d 568, 794 N.Y.S.2d 788 (2005)(police officer's report on latent fingerprint test testimonial); *Russeau v. State,* 171 S.W.3d 871 (Tex.Crim.App.2005)(disciplinary report concerning defendant's misbehavior in prison testimonial); *cf. People v. Rogers,* 8 A.D.3d 888, 780 N.Y.S.2d 393 (2004)(report of private company that performed blood test testimonial).

Intermediate appellate and lower courts within at least Florida, New York, and Texas appear to have taken contrary positions. Hence, attempting to reconcile these authorities would be premature until those states' highest courts have spoken.

Nevertheless, in the circumstances of this case, we consider the majority cases better reasoned. Applying their holdings here shows that the report does not raise the evils at which the Confrontation Clause was directed. *See Crawford, supra,* 541 U.S. at 51, 124 S.Ct. at 1364 (not all hearsay implicates the Sixth Amendment's core concerns).

Many of the cases cited by defendant emphasize that the documents at issue were prepared for the purpose of litigation. *See, e.g., People v. Hernandez, supra,* 794 N.Y.S.2d at 789 ("The fingerprints in question were not taken simply for administrative use. They were taken with the ultimate goal of apprehending and successfully prosecuting a defendant."); *City of Las Vegas v. Walsh, supra* (affidavit prepared solely for the prosecution's use at trial); *People v. Rogers, supra* (report requested by and prepared for law enforcement for the purpose of prosecution).

In contrast, to be admissible as a business record, a document must have been prepared in "the regular practice of that business activity." CRE 803(6); *see Palmer v. A.H. Robins Co.,* 684 P.2d 187 (Colo.1984)(business records exception does not apply to self-serving information prepared in anticipation of litigation); *cf. United States v. Bohrer,* 807 F.2d 159 (10th Cir.1986)(business records exception is not available to documents prepared for litigation).

Here, on petition for rehearing, defendant does not dispute the report is a business record. Defendant does not assert, and the record does not show, that the report was prepared at the express direction of the prosecutor for the purpose of litigation.

At trial, defendant conceded that the material seized from his truck was cocaine. He disputed only the amount seized. Weighing incoming material to be tested is a routine laboratory procedure. *See People v. Johnson, supra; Commonwealth v. Verde, supra.* Thus, a technician who prepared such a report would "merely have authenticated the document." *People v. Johnson, supra,* 121 Cal.App.4th at 1413, 18 Cal.Rptr.3d at 233 (laboratory report "was not a substitute for live testimony at [defendant's] revocation

hearing; it was routine documentary evidence").

Many of defendant's cases also emphasize that the documents at issue were affidavits. *See, e.g., People v. Durio, supra; Moreno Denoso v. State, supra.* The majority in *Crawford* identified affidavits as a specific category of testimonial evidence.

But the report before us is not an affidavit. Nor does it resemble the other types of statements identified by the *Crawford* majority as testimonial, such as "prior testimony at a preliminary hearing, before a grand jury, or at a former trial." It is not a statement obtained from a witness during a "police interrogation." *Crawford, supra,* 541 U.S. at 67, 124 S.Ct. at 1374.

Further, the report does not include detailed descriptive information that would typically be presented through narrative testimony. *See Russeau v. State, supra.* And, while the report names defendant, it contains no directly accusatorial statements against him. *See Johnson v. State, supra* (statement intended to lodge a criminal accusation against a defendant).

Therefore, we conclude that the report was not testimonial, and *Crawford v. Washington, supra,* does not require its exclusion.

### C. *Compan v. People*

We further conclude defendant's confrontation rights as to nontestimonial hearsay were not violated.

■ If hearsay is not testimonial, we continue to determine its admissibility under *Ohio v. Roberts, supra,* and *People v. Dement,* 661 P.2d 675 (Colo.1983). *See Compan v. People, supra.*

The prosecution must show at least that the out-of-court statement bears sufficient indicia of reliability. *Compan v. People, supra.* Reliability can be inferred where the statement falls under a firmly rooted hearsay exception. *People v. Fry, supra.*

In *Compan v. People, supra,* 121 P.3d at 884, the supreme court declined to reach the argument that "unavailability should no longer be required in light of the United States Supreme Court's abandonment of the re-

quirement when hearsay falls within a firmly rooted exception" because in the case before it the hearsay declarant was clearly unavailable.

■ As the report is a business record within the CRE 803(6) hearsay exception, its admission required only testimony from an adequate foundation witness, such as the technician who prepared the report, whom defendant could then confront.

Defendant failed to obtain the presence of the technician by giving pretrial notice under the statute. *See People v. Mojica–Simental, supra,* 73 P.3d at 19 (the requirement that a defendant must give notice at least ten days before trial "infringes on a defendant's right of confrontation no more than those minimal requirements" of "being present at trial and standing up and questioning the witnesses"). For this reason, we do not address continued viability, if any, of the unavailability requirement.

Accordingly, we discern no error, constitutional or evidentiary, in admitting the laboratory report without the testimony of the technician who prepared it or a comparable authenticating witness.

## II. Hearsay of Informant

Defendant also contends his right of confrontation was violated by the erroneous admission of hearsay testimony from a police officer. We conclude that even if defendant preserved this issue as a confrontation violation, reversal is not required.

Hearsay is a statement made by someone other than the declarant while testifying at trial, offered into evidence to prove the truth of the matter asserted. CRE 801(c). Hearsay evidence is generally inadmissible at trial unless it meets one of the established exceptions. CRE 802; *see People v. King,* 121 P.3d 234, 2005 WL 170727 (Colo.App. No. 02CA0201, Jan. 27, 2005).

Not every hearsay exception raises a confrontation issue. *Crawford v. Washington, supra.* For example, in most cases exceptions for marriage, baptismal, and similar certificates, CRE 803(12); family records, CRE 803(13); and real estate records, CRE 803(14)-(15), do not shield an identifiable declarant from the adverse party's right to cross-examination.

Here, when the police officer testified that the informant "placed a call to a party whom he identified or said that he knows as Oscar and placed an order for one kilogram of cocaine," and that "the vehicle fit the description that was given [by the informant]," defendant did not object.

Later, the officer testified that the informant arranged for the supplier to "pull up, honk his horn, and that [the informant] was supposed to go out and exchange the drugs for the money in the parking lot." Defendant objected to the testimony as hearsay. Before the People responded, the court overruled the objection, without explanation.

During cross-examination, the officer explained that because he was not fluent in Spanish, his partner had translated into English the informant's side of the phone call while it occurred, as well as the conversation with the informant after the call. Defendant did not object to the translation as hearsay.

### A. Translation as Hearsay

■ We reject defendant's assertion that the partner's translation added a layer of inadmissible hearsay to the informant's statements.

We review for plain error because defendant did not raise this objection below. *See People v. Kruse,* 839 P.2d 1 (Colo.1992).

■ An interpreter serves as a language conduit for the declarant. Hence, admission of translated testimony is appropriate when the circumstances assure its reliability. Relevant factors include: (1) whether actions after the translated conversation were consistent with the translated statements; (2) whether the interpreter had qualifications to interpret and language skill; (3) whether the interpreter had any motive to mislead or distort; and (4) which party supplied the interpreter. *People v. Gutierrez,* 916 P.2d 598 (Colo.App.1995).

Here, defendant arrived at the arranged location in a particular vehicle, parked, and honked his horn, all as described earlier by the informant, according to the translation.

The officer testified that although he did not know whether his partner was certified as a professional translator, the partner's primary language is Spanish and he had frequently translated conversations during their twelve-year partnership. Moreover, the officer who translated had an incentive to translate the details of the arranged drug transaction correctly to identify and arrest the suspect.

Therefore, we discern no plain error.

### B. Informant's Statements

■ We next reject defendant's assertion that because the informant's statements constituted inadmissible hearsay, the court committed reversible error.

■ We review for plain error the portion of the informant's hearsay to which defendant did not object. *People v. Kruse, supra.* We apply a constitutional harmless error analysis to that part of the officer's testimony to which defendant objected. *See People v. Harris, supra; People v. Couillard,* 131 P.3d 1146, 2005 WL 2298152 (Colo.App. No. 03CA1747, Sept. 22, 2005).

Here, defendant asserts that the People offered testimony about the informant's arrangements with him to prove that he intended to sell the cocaine. The record does not inform us whether the People offered this testimony for a nonhearsay purpose (such as to provide context for the officers' actions), whether they considered a hearsay exception applicable, or why the trial court overruled defendant's hearsay objection.

In any event, we will consider this testimony as hearsay, because we conclude that even if so, defendant is not entitled to relief. Further, because we conclude that the record does not support the People's argument for indicia of reliability under the *Roberts–Dement* test, we need not decide whether the informant's statements were testimonial under *Crawford.*

■ For the first time on appeal, the People argue that the statements bear sufficient indicia of reliability because they are admissible under the hearsay exception for spontaneous present sense impressions. According to the People, the informant was describing his conversation with his supplier.

Because we reject this argument, we do not address whether the People must also show the informant's unavailability.

A "spontaneous statement describing or explaining an event or condition made while the declarant was perceiving the event or condition" is an exception to the hearsay rule. CRE 803(1). Because the People raise CRE 803(1) for the first time on appeal, the trial court made no findings as to its application here.

■ Colorado law requires that a statement be instinctive and spontaneous to constitute a present sense impression. *See People v. Czemerynski,* 786 P.2d 1100 (Colo.1990)(holding an immediate identification of the caller during a telephone conversation was admissible as a present sense impression). Statements that imply existing knowledge about facts unknown to the declarant and that predict future events do not constitute spontaneous present sense impressions. *People v. Franklin,* 782 P.2d 1202 (Colo.App.1989).

Here, the officer's testimony commingled statements of the informant relating the content of his telephone conversation after it had ended with the informant's side of the conversation while it was occurring. Hence, we conclude this testimony was not a spontaneous present sense impression.

Having concluded that the People failed to establish sufficient indicia of reliability, we examine the informant's statements in the context of defendant's objection.

### 1.

■ With respect to the unobjected-to hearsay, plain error requires that we consider whether the error was "obvious, substantial, and grave." *Moore v. People,* 925 P.2d 264, 268 (Colo.1996); *see also People v. Petschow,* 119 P.3d 495 (Colo.App.2004).

■ If we discern plain error, we then review the entire record to ascertain whether the error so undermined the trial's fundamental fairness as to cast serious doubt on the reliability of the conviction. *Woertman v. People,* 804 P.2d 188 (Colo.1991); *People v. Fisher,* 9 P.3d 1189 (Colo.App.2000). Rele-

vant factors include the strength of the evidence against the defendant, the posture of the defense, and any improper remarks by the prosecution. *People v. Rodgers,* 756 P.2d 980 (Colo.1988).

Here, defendant reserved his opening statement, and thus the trial court would not have been aware defendant intended to acknowledge that the events transpired as presented in the People's case, but subject to his explanation of collecting a debt from the informant rather than selling cocaine to him and being ignorant of the cocaine in his truck. The officer presented a lengthy narrative of the background leading up to apprehension of the informant. Within this narrative, the officer made brief references to the statements by the informant about defendant. Under these circumstances, we discern nothing that would make the hearsay problem in the statements about defendant so obvious as to require sua sponte action by the trial court. *See People v. Petschow, supra.*

Hence, we conclude the error is not plain.

2.

■ With respect to the objected-to hearsay, review for error harmless beyond a reasonable doubt involves several factors, including the importance of the evidence to the People's case, the overall strength of the People's case, the cumulative nature of the evidence, and the presence or absence of corroborating or contradictory evidence. *People v. Trujillo,* 49 P.3d 316 (Colo.2002); *Blecha v. People, supra.*

■ Before defendant objected, the officer had already testified, without objection, that the informant called defendant to place an order for a kilogram of cocaine. Thus, even if the objected-to hearsay had not been admitted, the jury would still have had to weigh similar unobjected-to hearsay against defendant's explanation that he was only attempting to collect a debt and that he was not aware of the kilo of cocaine found in his truck. Because the objected-to hearsay testimony was cumulative of the unobjected-to hearsay, we conclude its erroneous admission was harmless beyond a reasonable doubt.

*See People v. Candelaria,* 107 P.3d 1080 (Colo.App.2004)(*cert. granted* Mar. 7, 2005).

Accordingly, we conclude the admission of the hearsay statements does not require reversal.

### III. Jury Instructions

Defendant next contends the trial court committed reversible error by failing to instruct the jury that quantity was an element of the offense which must be proved beyond a reasonable doubt. We disagree.

### A. Quantity as an Element

■ We reject defendant's argument that quantity is an element of possession with intent to distribute a controlled substance. "Section 18–18–405(3)(a) does not create an additional element [of quantity] for the underlying substantive offense; rather, it defines circumstances that, if proven beyond a reasonable doubt, may require a sentence greater than the presumptive minimum contained in [§ 18–1.3–401(1)(a), C.R.S.2004]." *Whitaker v. People,* 48 P.3d 555, 559 (Colo. 2002).

### B. Proof of Quantity Beyond a Reasonable Doubt

■ Nevertheless, quantity still must be proved beyond a reasonable doubt. *Whitaker v. People, supra; People v. Abiodun,* 87 P.3d 164 (Colo.App.2003), *aff'd,* 111 P.3d 462 (Colo.2005); *see also Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)(any fact, other than a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt).

■ Because defendant did not object to the jury instructions or verdict form at trial, we review for plain error. In determining whether plain error occurred, we consider the jury instructions as a whole. *People v. Miller,* 113 P.3d 743 (Colo.2005).

Here, the trial court used the pattern instructions for possession with intent to distribute a controlled substance, the presumption of innocence, and the burden of proof. CJI–Crim. 3:04, 36:02 (1983).

The court also instructed the jury, "In considering the net weight of any material, compound, mixture, or preparation that contains a schedule II controlled substance, you shall exclude the weight of the packaging materials."

The structure of the verdict form required the jury to find: (1) defendant's guilt of unlawful possession with intent to distribute cocaine; and (2) the quantity of cocaine. The verdict form does not expressly direct the jury to find the amount of cocaine beyond a reasonable doubt.

Nevertheless, viewing the instructions as a whole, we conclude the record shows that the court properly instructed the jury on the burden of proof, and the structure of the jury form required both findings to convict defendant. Moreover, both the People and defendant repeatedly emphasized during closing arguments that the People had the burden of proof, including as to the quantity of the cocaine. See People v. Fichtner, 869 P.2d 539 (Colo.1994)(counsel's closing argument relevant to impact of instructional error).

The better practice under recent case law would be to include explicit instructions that quantity must be found beyond a reasonable doubt. See, e.g., Lopez v. People, 113 P.3d 713 (Colo.2005). However, we conclude the instructions here do not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. See People v. Miller, supra.

Accordingly, we conclude the trial court did not commit plain error in its instructions to the jury.

### IV. Prosecutorial Misconduct

Defendant next contends that prosecutorial misconduct during the closing rebuttal violated his right to a fair trial and requires reversal. We disagree.

Because defendant did not object at trial, we review the prosecutor's remarks only for plain error. See People v. Miller, supra. To constitute plain error, prosecutorial misconduct must be "flagrant or glaringly or tremendously improper" and must so undermine the fundamental fairness of the

trial as to cast serious doubt on the reliability of the judgment of conviction. People v. Salyer, 80 P.3d 831, 839 (Colo.App.2003).

Prosecutorial misconduct in closing argument rarely constitutes plain error. People v. Gordon, 32 P.3d 575 (Colo.App. 2001). A prosecutor enjoys considerable latitude in replying to opposing counsel's argument. People v. Salyer, supra. In considering whether prosecutorial remarks are improper, we weigh the effect of those remarks on the trial and take into account "defense counsel's opening salvo." People v. Vialpando, 804 P.2d 219, 225 (Colo.App.1990)(quoting Wilson v. People, 743 P.2d 415 (Colo.1987)).

Here, defense counsel commented eleven times during closing argument on the prosecutor's failure to subpoena witnesses, including six references to the informant. During his rebuttal argument, the prosecutor responded to defense counsel's repeated references to the absence of the informant by saying: "Has anybody asserted their Fifth Amendment rights? This is all smoke because that's what their case is based on, smoke."

Although the first part of the comment seemingly refers to the informant's assertion of his constitutional rights, the comment is vague. Cf. People v. Ray, 109 P.3d 996 (Colo.App.2004)(holding the prosecutor's ambiguous remark about defendant's decision not to testify did not implicate his constitutional rights); People v. Rivas, 77 P.3d 882 (Colo.App.2003)(holding police officer's statements about defendant did not constitute plain error because they were ambiguous, vague, and brief).

Furthermore, even assuming that the prosecutor inappropriately speculated on why the informant did not testify, his comments were not flagrantly, glaringly, or tremendously improper. The remarks were brief, were in direct response to defense counsel's closing argument, and did not relate directly to any elements of the offense. See People v. Sepeda, 196 Colo. 13, 581 P.2d 723 (1978)(prosecutor's comment which did not misstate the elements of the offense or misinterpret the application of the law did

not constitute reversible error); *People v. Roadcap*, 78 P.3d 1108 (Colo.App.2003)(prosecutor's comment about defendant's "smoke screen" constituted a fair comment on the evidence).

Accordingly, because these comments do not seriously undermine the reliability of the judgment of conviction, they do not constitute plain error. *See, e.g., People v. Salyer, supra; People v. Gordon, supra.*

### V. *Batson* Challenge

■ Defendant next contends the People's peremptory challenges violated the Equal Protection Clauses of the federal and state constitutions. We disagree.

■ The Equal Protection Clauses of the United States and Colorado Constitutions guarantee that potential jurors will not be excluded from service on account of race or national origin. *Miller–El v. Dretke*, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005); *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Valdez v. People*, 966 P.2d 587 (Colo.1998).

■ In evaluating allegations of discriminatory jury selection, the court employs a three-step process. First, the defendant must make a prima facie showing that the People excluded jurors based solely on their race. Second, if the defendant makes this showing, then the burden shifts to the People to articulate a race-neutral reason for excluding the jurors in question. This burden requires the People to provide only a facially race-neutral reason, not an explanation that is persuasive or even plausible. *Valdez v. People, supra* (citing *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)). Third, if the People provide a race-neutral reason, the trial court must consider all relevant circumstances to determine whether the defendant has proved purposeful racial discrimination. *Valdez v. People, supra.*

■ We afford due deference to the trial court's determination of purposeful racial discrimination at the third stage and review only for clear error. *Valdez v. People, supra.*

Here, defendant objected to the prosecutor's use of the first two peremptory challenges to strike prospective jurors with Hispanic surnames. The court found defendant made a prima facie showing of discrimination. The prosecutor then replied that the first prospective juror misstated the burden of proof as "beyond all doubt," which would be an impossible burden to meet. The prosecutor explained that the second prospective juror had revealed a prior concealed weapons charge on his jury questionnaire and may have had contact with the drug subculture based on his "status as a biker."

The trial court overruled defendant's objection, finding that "the explanation offered by [the prosecutor] does not inherently contain a reason which would offend the rights of jurors and/or the rights of the defendant to have this juror sit on his panel." The ruling was made after defendant had had an opportunity to argue that the prosecutor's reasons were pretextual, and defendant does not contend that, in so ruling, the trial court failed to complete the third step of the *Batson* analysis. Although the trial court's conclusion could have been more precise, we discern no clear error.

■ A juror's understanding and applying the correct burden of proof are critical to the defendant's receiving a fair trial, and the first prospective juror appeared to misunderstand that burden. *See Morgan v. People*, 624 P.2d 1331 (Colo.1981). As to the second prospective juror, his previous weapons charge and interest in motorcycles were race-neutral reasons for exercise of the People's peremptory challenge. *See Valdez v. People, supra* (a reviewing court will defer to a trial court's findings under the third step when supported by the record); *People v. Chou*, 981 P.2d 668 (Colo.App.1999).

Defendant's reliance on *People v. Gabler*, 958 P.2d 505 (Colo.App.1997), is misplaced. In that case, after accepting a jury without racial minorities, the prosecution immediately used two peremptory challenges to dismiss minority replacement jurors without questioning either of them during voir dire. The division concluded that the prosecution's stated reason for its challenge, an alleged bias

against the police, was pretextual because no police officers testified at trial.

Accordingly, we conclude the People's use of peremptory challenges did not violate defendant's equal protection rights.

## VI. Disqualified Juror

■ Defendant next contends the trial court committed reversible error by failing sua sponte to excuse a prospective juror who was employed as a correction specialist with a community corrections program. We disagree.

A trial court "shall sustain a challenge for cause" if the juror is a compensated employee of a public law enforcement agency. Section 16–10–103(1)(k), C.R.S.2004; Crim. P. 24(b)(1)(XII).

■ Thus, "it is incumbent upon the challenging party to clearly state on record the particular ground on which a challenge for cause is made" in order to "direct appropriate questions to the juror to determine whether the challenge is well taken." *People v. Russo,* 713 P.2d 356, 361 (Colo.1986).

While § 16–10–103(1)(k) and Crim. P. 24(b)(1)(XII) require the trial court to grant a party's challenge for cause to a juror who is so employed, neither expressly requires the court to excuse a juror sua sponte. *People v. Coney,* 98 P.3d 930 (Colo.App.2004); *People v. Evans,* 987 P.2d 845 (Colo.App.1998), *overruled on other grounds by People v. Lefebre,* 5 P.3d 295 (Colo.2000).

Here, defense counsel had the opportunity to question this prospective juror after she disclosed her work as a correction specialist, but did not do so. Because neither side challenged her for cause, we conclude the trial court did not err in allowing this prospective juror to be impaneled. *See People v. Coney, supra.* In arguing that we should decline to follow *People v. Coney,* defendant relies on cases in which parties challenged prospective jurors for cause. We find this authority unpersuasive.

Defendant cites no Colorado or United States Supreme Court authority, and we have found none, holding that a trial court's failure sua sponte to excuse a prospective

juror raises a constitutional issue subject to plain error or structural error review. Hence, we reject defendant's invitation to undertake such a review.

Accordingly, the trial court did not err by failing sua sponte to excuse the prospective juror.

## VII. Minimum Sentence

■ Defendant finally contends the court erred in imposing a sentence of sixteen years because the plain language of former § 18–18–405 referred only to the presumptive range found in former § 18–1–105(1)(a) (now codified at § 18–1.3–401(1)(a), C.R.S.2004), not former § 18–1–105(9.7) (now codified at § 18–1.3–401(10), C.R.S.2004). We are not persuaded.

Because all these statutes have been renumbered, and some have been amended, for clarity we will refer to them as numbered when defendant was sentenced.

■ Statutory construction is a question of law that we review de novo. *People v. Coleby,* 34 P.3d 422 (Colo.2001).

■ Our primary goal when interpreting a statute is to give effect to the General Assembly's purpose. In doing so, we begin with the language of the statute. If the statutory language unambiguously sets forth the legislative purpose, we need not apply additional rules of statutory construction. *People v. Cooper,* 27 P.3d 348 (Colo. 2001).

■ We assume the General Assembly intended that the entire statute be effective. Section 2–4–201(1)(b), C.R.S.2004; *People v. Luther,* 58 P.3d 1013 (Colo.2002). When construing statutes, courts must read and consider the statutory scheme as a whole to give consistent, harmonious, and sensible effect to all its parts. *Mishkin v. Young,* 107 P.3d 393 (Colo.2005). We also presume the General Assembly intends a just and reasonable result when it enacts a statute, and a construction that leads to an absurd result will not be followed. Section 2–4–201(1)(c), C.R.S.2004; *Conte v. Meyer,* 882 P.2d 962 (Colo.1994).

Section 18–18–405(3)(a)(III) then stated:

[A]ny person convicted pursuant to [§ 18–18–405(2)(a) ] for knowingly . . . possessing with intent to . . . distribute . . . an amount that is . . .

(III) One thousand grams or one kilogram or more of any . . . schedule I or schedule II controlled substance . . . shall be sentenced to the department of corrections for a term greater than the maximum presumptive range but not more than twice the maximum presumptive range provided for such offense *in section 18–1–105(1)(a)* . . . .

(Emphasis added). Section 18–1–105(1)(a)(V)(A) provided that a class three felony carries a presumptive range of four to twelve years.

However, another subsection of § 18–1–105 provided that "[u]nlawful distribution, manufacturing, dispensing, sale, or possession of a controlled substance with the intent to sell, distribute, manufacture, or dispense, as defined in section 18–18–405" is an extraordinary risk of harm crime, and the "maximum sentence in the presumptive range shall be increased by four years." Section 18–1–105(9.7)(a), (b)(XI); *People v. Coleman*, 55 P.3d 817 (Colo.App.2002).

We perceive no conflict between these statutory provisions. In § 18–18–405 the General Assembly defined the elements of the crime of possession with intent to distribute and incorporated the presumptive range statute found in former § 18–1–105(1)(a). Section 18–18–405 does not preclude the finding that an offense is an extraordinary risk crime and application of former § 18–1–105(9.7) to increase the presumptive range found in subsection (1)(a).

We also reject defendant's interpretation of § 18–18–405(3)(a)(III) because it leads to an unreasonable result. The statute provides enhanced sentencing for possession with intent to distribute. That offense is also always an extraordinary risk crime. Defendant's argument that his sentence should be limited to the presumptive range in former § 18–1–105(1)(a) would nullify the General Assembly's intent to enhance the sentence for possession because it is "an extraordinary risk" crime under former § 18–1–105(9.7).

Accordingly, we conclude the trial court did not err by sentencing defendant to sixteen years in the DOC.

The judgment of conviction and sentence are affirmed.

Judge ROTHENBERG and Judge VOGT concur.