Affirmed and Opinion filed February 8, 2007








Affirmed and Opinion filed February 8, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00381-CR

____________

 

JERMAINE ANDRE GRANT, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 230th
District Court

Harris County, Texas

Trial Court Cause No. 1016934

 



 

O P I N I O N








In this appeal of his conviction for aggravated robbery,
appellant Jermaine Andre Grant argues the trial court twice violated his state
and federal constitutional rights to confront the witnesses against him, and
improperly denied his motion for mistrial after the prosecution alluded to his
failure to testify.  We hold that appellant waived his first confrontation
clause complaint, and although we agree that the trial court erred in admitting
testimonial statements contained in appellant=s high school
disciplinary records, we conclude the error was harmless beyond a reasonable
doubt.  We further hold that the trial court cured any error arising from the
prosecution=s statement by immediately instructing the jury to
disregard it.  Thus, we affirm the judgment of the trial court.   

I.  Factual and Procedural
Background

Appellant does not challenge the factual or legal
sufficiency of the evidence.  Therefore, we recite only those facts necessary
for our analysis.  

On July 19, 2004, appellant approached two women and two
men chatting in the driveway of a townhouse in Alief.  He demanded their
wallets and purses, and threatened them with a shotgun.  When none of the four
was able to produce any money, he led them inside the townhouse so that one of
the women could retrieve her purse.  Appellant then directed them back outside,
ordered them into one of the parked vehicles, and fled on foot after
confiscating several cell phones.  Appellant was indicted for the aggravated
robbery of one of the women.

All four of the eyewitnesses testified at trial, and three
of them positively identified appellant as the robber.  Appellant=s trial counsel
attempted to elicit testimony from Officer Turner, the responding officer, that
the version of events the eyewitnesses related on the night of the robbery
differed from that provided at trial.  However, the judge sustained the State=s objections that
the answers to defense counsel=s questions called for hearsay and
speculation.  The jury convicted appellant of the charged offense.








In the punishment phase of trial, the State presented
evidence indicating that  appellant and several other young men essentially
terrorized the city of Alief during the summer of 2004.  Typically, their
victims were lone Asian women who were approached in their driveways.[1] 
Some of the victims spoke no English.  According to the testimony, these women
were prime targets due in part to perceived cultural mores that would make them
less likely to report the crime or participate in the investigation.  

The State also presented evidence of appellant=s behavior during
these offenses. According to the evidence presented, appellant commonly
brandished a firearm, demanded money, and usually took any cell phones
present.  On one occasion, when a husband and wife did not provide money
quickly enough, appellant put a pistol to the neck of the couple=s one-year-old son
until the couple was able to provide cash.  On another occasion, appellant
threatened to kill a victim=s young sister.  At other times, appellant
placed a gun to the victim=s temple or forehead.  

Other testimony admitted concerned appellant=s propensity for
violence and threats. High school student C.D.[2]
testified that appellant mistook him for C.D.=s brother, with
whom appellant had been in an altercation.  C.D. testified that the day
following the altercation, appellant saw C.D. in an apartment parking lot
taking out the trash and drove up behind him with a group of other males. 
Appellant then got out of his car, brandished a firearm and threatened to kill
C.D.  

The State also introduced appellant=s high school
disciplinary records over appellant=s objections.  The
records list the date of alleged disciplinary infractions, the reporting
teacher or administrator, the name of the assistant principal responsible for
the student, the alleged infraction, the punishment meted out, and a
description of the events that led to the punishment.  Some of the descriptions
provided quotations or the observer=s perceptions of
actions, attitudes, or language used.  Some of the descriptive entries were:

!                  
Jermaine told
Ms. Katsaros ADamn, Leave me alone@ Plus other obscenities

!                  
name calling,
profanity, pushing, shoving, in No. Gym AI will slap you side your bitch head@








!                                                                                          
using profanity
in DH Aass@ was told to leave, instead stayed and used
profanity again       

!                  
would not
remain quiet . . . disruptive . . . took pen away from
student . . . . Would not return given library pass
and refused to go to finish work

!                  
student stole
referral off of secretary=s desk

!                  
Repeatedly
drinking in class after being ref=d to AP by teacher in the past

!                  
disruptive very
loud in class saying inappropriate things

!                  
left class to
talk to student in hallway told him to get back to his seat he said that tea.
should get back into class

!                  
insubordiant
[sic] trying to talk to another student Jermaine kept interrupting and would
not stop talking & would not sit down

!                  
wandering halls
disturbed class twice threw a pen at a student

!                  
instead
of being in the gym he was at the SAC room.  He told Ms. Harper that he was not
going to get into trouble

During its closing argument in the punishment phase of
trial, the State told the jury, AYou looked through
this whole entire trial.  You look at Jermaine Grant=s face.  You have
heard all the testimony.  Did you ever see any sorrowness or remorse?@  Appellant
objected on the ground that the State improperly commented on appellant=s failure to
testify.  The trial court sustained the objection and instructed the jury to
disregard this argument, but refused to grant a mistrial.

At the close of the punishment phase of trial, the jury
sentenced appellant to thirty years= confinement. 

II.  Issues Presented








Appellant presents three issues for review.  First, he
contends that the trial court violated the Confrontation Clause when it
sustained the State=s objections to appellant=s questioning of
Officer Turner regarding potentially conflicting witness statements.  Second,
appellant argues that the trial court violated the Confrontation Clause when it
admitted appellant=s high-school disciplinary records.  In
his final issue, appellant contends the trial court erred by denying his motion
for a mistrial on the grounds that the State purportedly alluded to appellant=s invocation of
his right not to testify.

III.  Analysis

A.      Waiver of Appellant=s First
Confrontation Clause Issue

In his first issue, appellant complains that the trial
court violated his federal and state constitutional rights to confront the
witnesses against him.  Appellant attempted to elicit testimony from Officer
Turner to undermine the witnesses= credibility and
show that their memories had faded.  The State objected on hearsay grounds and
the trial court sustained that objection.  Although he did not raise any
confrontation clause issue below, on appeal he complains the trial court
violated his State and federal rights to confront the witnesses against him. 
However, because appellant failed to object on this basis at trial, the
argument is waived on appeal.  See Wright v. State, 28 S.W.3d 526, 536
(Tex. Crim. App. 2000); see also Eustis v. State, 191 S.W.3d 879, 884
(Tex. App.CHouston [14th Dist.] 2006, pet. ref=d).  We
therefore overrule appellant=s first issue.

B.      The High School Disciplinary Records








Appellant next challenges the admission of his high school
disciplinary records during the punishment phase of trial, arguing that the
admission of these records violates both his State and federal constitutional
rights to confront the witnesses against him.  However, at trial, appellant=s objection on
confrontation clause grounds is limited to the statement, AI think you got Crawford
questions there.  Because he doesn=t have his right
to confront that witness.@  We interpret this objection as raising
objections under Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354,
158 L. Ed. 2d 177 (2004).  The Supreme Court=s opinion in Crawford
addressed only the right to confrontation guaranteed by the United States
Constitution; thus, appellant=s trial objection did not challenge the
admission of the evidence on the basis that such admission violated his
confrontation rights under the Texas Constitution.  Moreover, appellant did not
brief this issue on appeal.  Accordingly, the question of whether the admission
of the records violated appellant=s State
constitutional rights is waived.  See Russeau v. State, 171 S.W.3d 871,
881 (Tex. Crim. App. 2005), cert. denied, 126 S. Ct. 2982, 165 L. Ed. 2d
990.

1.       Governing
Law Regarding Crawford ATestimonial
Statements@

To resolve appellant=s second issue, we
must further interpret the meaning of Atestimonial
statements@ in the wake of Crawford.  In Crawford,
the Supreme Court held that it was a violation of the Sixth Amendment to the
United States Constitution to admit testimonial statements of a witness who did
not appear at trial unless that witness was unavailable to testify and the
defendant had a prior opportunity for cross-examination.  541 U.S. at 68, 124
S. Ct. at 1374.  The right of confrontation applies only to Awitnesses@ against the
accused, defined as Athose who >bear testimony.=@ 541 U.S. at 51,
124 S. Ct. at 1364 (citing 2 N. Webster,
An American Dictionary of the English Language (1828)).  The right
further applies only to Atestimony,@ defined as a Asolemn declaration
or affirmation made for the purpose of establishing or proving some fact.@  Id.   The
right is not avoided simply by admitting the evidence under an exception to the
hearsay rules.  See id., 541 U.S. at 55B56, 124 S. Ct. at
1366B67.  The Supreme
Court did not, however, provide a comprehensive definition of the phrase Atestimonial
statement.@  See id., 541 U.S. at 68, 124 S. Ct. at 1374. 








After Crawford was decided, the Court of Criminal
Appeals provided some additional guidance in Russeau, supra.  In Russeau,
the court determined whether admission of the appellant=s disciplinary
records and incident reports from state and county jail facilities violated his
federal rights under the Confrontation Clause.  Russeau, 171 S.W.3d at
880.  The reports at issue documented the appellant=s disciplinary
infractions Ain the most detailed and graphic of terms@ and were based on
the corrections officers= own observations or the observations of
others.  Id.  The court held that the records contained testimonial
statements, which were inadmissible because the State did not show that the
declarants were unavailable to testify, and the defendant had not had an
opportunity to cross-examine any of them.  Id. at 880B81.  Like the
Supreme Court in Crawford, the court noted that a statement is generally
testimonial if it is Aa solemn declaration made for the purpose
of establishing some fact.@  Id. at 880 (citing Crawford,
541 U.S. at 51, 124 S. Ct. at 1364).  

Almost four months later, this court decided Ford v.
State, 179 S.W.3d 203 (Tex. App.CHouston [14th
Dist.] 2005, pet. ref=d), cert. denied, 127 S. Ct. 281
(2006).  In Ford, we noted that Crawford provided three
formulations for Acore@ testimonial
evidence: (1) ex parte in-court testimony or its functional equivalent
such as affidavits, custodial examinations, prior testimony not subject to
cross-examination, or similar pretrial statements that declarants would
reasonably expect to be used prosecutorially; (2) extrajudicial statements
of the same nature contained in formalized testimonial materials; and
(3) statements that were made under circumstances that would lead an
objective witness reasonably to believe that the statement would be available
for use at a later trial.  Id. at 208 (citing Crawford, 541 U.S.
51B52, 124 S. Ct. at
1364) (quotations omitted).  Yet, as we have already discussed, these
formulations were not intended to be exclusive, as the Supreme Court declined
to provide a comprehensive framework or definition for evaluating potentially
testimonial statements.  We held that the disciplinary records at issue did not
contain testimonial statements because, unlike the records in Russeau,
the records in Ford merely recited appellant=s offenses and the
punishments he received for those offenses.  Those recitations were not
graphic, and were devoid of any detail.  Id. at 209.  Moreover, the
records did not narrate the events or the observations of the declarant or
others.  Although this point was not specifically emphasized in Ford, it
was nevertheless readily apparent in our quotation of the records themselves.  








Other courts have attempted to distinguish our
interpretation of admissible non-testimonial statements in Ford from the
inadmissible testimonial statements described by the Court of Criminal Appeals
in Russeau.  The Twelfth Court of Appeals reasoned that the difference
between the evidence at issue in Ford and Russeau is the
inclusion or omission of observations by those making the entries.  See
Henderson v. State, No. 12-05-00268-CR, 2006 WL 1791596, at *6 (Tex. App.CTyler June 30,
2006, no pet.) (mem. op., not designated for publication).  The Fourth Court of
Appeals similarly determined that the difference between the records in Ford
and Russeau is that the records in Ford were simply objective
recitations of historical facts, whereas the records in Russeau
contained subjective observations.  See Nieschwietz v. State, No.
04-05-00520-CR, 2006 WL 1684739, at *6 (Tex. App.CSan Antonio Nov.
8, 2006, pet. ref=d) (mem. op., not designated for
publication).  An intermediate Colorado court of appeals stated that the
holding in Russeau turned on the existence of Adetailed
descriptive information that would typically be presented through narrative
testimony.@  People v. Hinojos-Mendoza, 140 P.3d 30, 37
(Colo. Ct. App. 2005), cert. granted, No. 05SC881, 2006 WL 2338141.








We take this opportunity to clarify that the distinction
between the admissible statements quoted in Ford and the inadmissible
statements described in Russeau is not simply the inclusion or omission
of Adetailed and
graphic@ personal
observations.  See Russeau, 171 S.W.3d at 880.  If this were the primary
distinction, then the often detailed and graphic observations of medical
examiners as stated in autopsy reports would be considered testimonial, yet
this is not the case.  See, e.g., Mitchell v. State, 191 S.W.3d 219, 221B22 (Tex. App.CSan Antonio 2005,
pet. ref=d) (holding that
autopsy reports are non-testimonial business records); Denoso v. State,
156 S.W.3d 166, 182 (Tex. App.CCorpus Christi 2005, pet. ref=d) (holding that
an autopsy report containing Amatters observed pursuant to a duty
imposed by law@ is non-testimonial for Crawford purposes). 
Rather, in Ford, we conceptualized the difference between testimonial
and non-testimonial statements as dependent in part on the extent to which the
statements are a sterile recitation of facts or a subjective narration of
events related to the appellant=s guilt or innocence.  In Ford,
the statements in the disciplinary reports were objective statements that
particular punishments were assessed for the identified disciplinary
infractions by the appellant; they were not narratives by witnesses against the
appellant relating to his guilt or innocence of the infractions described. 
Consequently, the statements were non-testimonial.  See Dowdell v. United
States, 221 U.S. 325, 330B31, 31 S. Ct. 590, 55 L. Ed. 753 (1911)
(holding that facts regarding conduct of prior trial, as certified by the
judge, the clerk of court, and the official reporter, did not relate to
defendant=s guilt or innocence and hence were not statements of Awitnesses@ under the
Confrontation Clause).  In contrast, the statements in Russeau contained
subjective narrations of the very actions by the appellant that constituted the
offenses for which he was punished.  Thus, the presence or absence of a
subjective narration of events related to the appellant=s guilt or
innocence is a significant difference between the statements at issue in Russeau
and Ford.

The United States Supreme Court recently provided further
illumination on the difference between testimonial statements and
non-testimonial statements in Davis v. Washington, 126 S. Ct. 2266, 165
L. Ed. 2d 224 (2006).  In Davis, the Court clarified that not all
statements made in response to police interrogation are testimonial:

Statements are nontestimonial when
made in the course of police interrogation under circumstances objectively
indicating that the primary purpose of the interrogation is to enable police
assistance to meet an ongoing emergency. They are testimonial when the
circumstances objectively indicate that there is no such ongoing emergency, and
that the primary purpose of the interrogation is to establish or prove past
events potentially relevant to later criminal prosecution.








Id. at 2273B74.  Although
neither Russeau nor Ford discussed the purpose of the statements
at issue, the Supreme Court in both Crawford and Davis emphasized
that the purpose of a testimonial statement is to establish or prove that some
fact is true or some event occurred. Consequently, the Court instructs us that
when the purpose of an interrogation by law enforcement personnel is Asolely directed at
establishing the facts of a past crime, in order to identify (or provide
evidence to convict) the perpetrator,@ the statements
resulting from the interrogation are testimonial.  Davis, 126 S. Ct. at
2276.  Moreover, the same analysis applies to statements that are volunteered
rather than those elicited by interrogation.  Id. at 2274 n.1 (AThe Framers were
no more willing to exempt from cross-examination volunteered testimony or
answers to open-ended questions than they were to exempt answers to detailed
interrogation.@).

Here, the
statements at issue are not intended to establish the facts of past crimes, but
to document violations of high school disciplinary rules, although some of the
incidents forming the basis of the violations, if prosecuted and proved, would
constitute serious crimes such as assault.  However, under Russeau and Ford,
we apply the same Crawford analysis to descriptions of violations of
disciplinary rules that we apply to descriptions of crimes.  We therefore
review the records at issue to determine whether the narrative descriptions of
disciplinary offenses were made by witnesses against appellant for the purpose
of establishing that the identified infractions of school rules actually
occurred.

2.       Records Contain Some Testimonial
Statements








The statements at
issue here may be characterized as falling somewhere between the graphic and detailed
testimonial statements described in Russeau and the sterile recitations
of fact quoted in Ford.  To place the statements in context, it is
helpful to note that the records containing the statements consist of nearly
ten pages of listed school disciplinary problems.  While some of the
infractions listed simply state the date, the offense, the reporting authority,
and the punishment without elaboration, others are more detailed and contain
descriptions of appellant=s conduct that constituted a violation of
school rules.[3] 
Some entries quote profane language appellant allegedly used or describe
sequences of events resulting in punishment.  The incidents range from class
disruption to theft and assault.  Although all of the descriptions are brief,
and thus, arguably are not the type of detailed, graphic statements described
in Russeau, length is not determinative; rather, our focus is on the
purpose and content of the statements.

After careful
review, we hold that many of the entries in the records contain testimonial
statements.  Specifically, the descriptions of appellant=s behavior and
quotations of language he used are not intended merely to establish that
appellant committed a disciplinary infraction, but to establish that he violated
school rules by engaging in the specific behavior described.  Compare
Russeau, 171 S.W.3d at 880 (holding that corrections officers= personal or
second-hand observations of appellant=s offenses,
described in detailed and graphic terms, are testimonial) with Ford,179
S.W.3d at 209 (holding that jail disciplinary records that Aare sterile
recitations of appellant=s offenses and the punishments he received@ are
non-testimonial).  Because the State did not show that the various teachers and
school administrators who provided these statements were both unavailable to
testify and had been cross-examined previously, we hold the trial court
erroneously admitted the testimonial portions of these records. 

3.       Error was Harmless Beyond a
Reasonable Doubt

Although the trial
court erred in admitting this evidence, we nevertheless will affirm if we
determine beyond a reasonable doubt that the harm from the error did not
contribute to appellant=s punishment.  Russeau, 171 S.W.3d
at 881.  In determining whether error in admitting testimonial statements in
violation of Crawford is harmless beyond a reasonable doubt, we
consider:

(1)     The importance of the
testimonial statements to the State=s case;

(2)     Whether the statements were
cumulative of other evidence;








(3)     The presence or absence of
evidence corroborating or contradicting the statements on material points; and

(4)     The overall strength of the State=s case.

Davis v. State, 203 S.W.3d 845,
852 (Tex. Crim. App. 2006) (citing Delaware v. Van Arsdall, 475 U.S.
673, 684, 160 S. Ct. 1431, 1438, 89 L. Ed. 2d 674 (1986)).  The error
does not require reversal unless there is Aa reasonable
possibility that the Crawford error, within the context of the entire
trial, >moved the jury
from a state of non-persuasion to one of persuasion= on a particular
issue.@  Id. at
852B53 (quoting Wesbrook
v. State, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000)).  








Utilizing this
test, we hold that the error was harmless beyond a reasonable doubt. First, the
testimonial statements were not important to the State=s case.  The
prosecution spent the majority of its time during the punishment phase focusing
on appellant=s string of aggravated robberies, and made little
reference to the high school disciplinary records. Second, a school
administrator testified concerning appellant=s general
behavioral problems at the high school; thus, the same general subject matter
was raised elsewhere in the evidence.  Additionally, the remainder of the
records, with the exception of the testimonial statements, were admissible;[4]
thus, properly admitted evidence that appellant committed the identified
disciplinary infractions and received the stated punishments provided some
corroboration of the testimonial statements, and to a lesser extent, rendered
the testimonial statements cumulative of other evidence.  The school
administrator=s testimony similarly corroborates the records
generally.[5] 
Finally, the prosecution=s case for punishment was very strong even
in the absence of the testimonial statements in the school disciplinary
records. The State presented compelling evidence that appellant had helped to
terrorize a community for months and had threatened to kill several people,
including an infant in his mother=s arms. The
misbehaviors described in the inadmissible portions of the high school
disciplinary records are, by comparison with the strength and volume of the
properly admitted evidence, inconsequential.  

In light of the
evidence properly before the jury, there is no reasonable possibility that the
testimonial statements moved the jury Afrom a state of
non-persuasion to one of persuasion@ with regard to
appellant=s punishment.  See id.  We therefore overrule
appellant=s second issue.

C.      Comment on Appellant=s Demeanor

In his final
issue, appellant asserts that the trial court committed reversible error during
the punishment phase of trial when it refused to grant a mistrial after the
prosecutor argued to the jury: AYou looked through this whole entire trial. 
You look at Jermaine Grant=s face.  You have heard all the
testimony.  Did you ever see any sorrowness or remorse?@  Although the
trial court did not grant a mistrial, it sustained appellant=s objection on the
ground that the statement was an improper comment on his invocation of his
right not to testify.  Additionally, the trial court promptly instructed the
jury to disregard that statement. 

Assuming the
argument was improper, an instruction from the trial court to disregard the
statement normally cures any error.  See Cooks v. State, 844 S.W.2d 697,
727 (Tex. Crim. App. 1992) (en banc).  If a trial court sustains an objection
to a comment, instructs the jury to disregard the statement, but denies a
motion for mistrial, the issue we must determine is whether or not the trial
court abused its discretion in denying the motion.  Hawkins v. State,
135 S.W.3d 72, 76B77 (Tex. Crim. App. 2004).  A mistrial is
required only when the error is incurable and Aso prejudicial
that expenditure of further time and expense would be wasteful and futile.@  Id. at
77.  The error is reversible if, in light of the entire record, the jury
argument was extreme or manifestly improper or injected new facts harmful to
the accused.  Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App.
2000).  








We hold that the
statement at issue did not require a mistrial, but instead was cured by the
trial court=s immediate instruction to disregard.  The prosecutor=s statement was
made at the beginning of the State=s initial closing
argument.  The State=s theme during closing argumentCboth in its
initial closing argument, and final closing argument following appellant=s closing argumentCdid not focus on
appellant=s purported lack of contrition, and made no further
allusion to his decision not to testify.  Rather, the State concentrated on the
string of aggravated robberies and the need to restore order to a victimized
and fearful community.  Taken in context, the argument was not so extreme or
manifestly improper that the trial court=s instruction
failed to cure any error.  We overrule appellant=s final issue.

IV.  Conclusion

Having overruled
each of appellant=s issues, we affirm the judgment of the
trial court.

 

 

 

 

 

/s/      Eva M. Guzman

Justice

 

 

 

 

Judgment rendered
and Opinion filed February 8, 2007.

Panel consists of
Justices Frost, Seymore, and Guzman.

Publish C Tex. R. App. P. 47.2(b).









[1]  The complainant and her three companions in this
case were Vietnamese.





[2]  We assume that this witness is under the age of
seventeen, and identify him by his initials.





[3]  The portions of records simply listing the alleged
disciplinary infraction , the punishment received, the dates of the offenses or
punishments, and the names of the school authorities involved are not at
issue.  Our holding in Ford clearly governs those aspects of the school
records.  Statements in the records that were made by the same school
administrator who testified at trial are also not at issue; because appellant
had the opportunity to question the witness, his confrontation clause objection
has no bearing on her statements in the records.  Our holding instead is
concerned only with the narrative descriptions of events and behaviors
constituting the rule infractions described where those descriptions were made
by a witness whom appellant had no opportunity to cross-examine.





[4]  Appellant asserted only a Crawford objection
to the admission of the school disciplinary records; he did not argue at trial
that these documents did not qualify as business records under the business
records exception to the hearsay rule, nor does appellant argue on appeal that
the State failed to establish that this evidence fell within that exception. 
Therefore, we do not address or analyze that issue in this appeal. 





[5]  As previously indicated, some of the statements in
the records were made by this same witness.  Accordingly, appellant=s Confrontation Clause objection was properly
overruled with respect to statements in the records made by the testifying
witness.